**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **22-cv-3402-JPO** |
| -against- | |
| **SUNG KOOK (BILL) HWANG, et al.,** | |
| **Defendants.** | |

## CONSENT OF DEFENDANT WILLIAM TOMITA

1.      Defendant William Tomita ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action.  Specifically, in *United States v. Tomita*, No. 22-cr-231 (S.D.N.Y.), Defendant pleaded guilty to violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78ff] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; Section 9(a)(2) of the Exchange Act [15 U.S.C. §§ 78i(a)(2) and 78ff]; the federal racketeering statute [18 U.S.C. § 1962(d)]; and the federal wire fraud statute [18 U.S.C. § 1343 and 2].  In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution, which is attached as Exhibit A to this Consent.  This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United* States *v. Tomita*.

3.      Defendant hereby consents to the entry of the Judgment in the form attached hereto (the "Judgment") and incorporated by reference herein, which, among other things:

(a)     permanently restrains and enjoins Defendant from violations of Section

17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §

77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule

10b-5 thereunder [17 C.F.R. § 240.10b-5], and Section 9(a)(2) of the

Exchange Act [15 U.S.C. § 78i(a)(2)]; and

(b)     permanently prohibits Defendant from serving as an officer or director of

any company that has a class of securities registered under Exchange

Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under

Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities

Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2)

[15 U.S.C. § 78u(d)(2)];

4.     Defendant agrees that, upon motion of the Commission, the Court shall determine

whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty pursuant

to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange

Act [15 U.S.C. § 78u(d)(3)] and, if so, the amount(s) of the disgorgement and/or civil penalty.

The Defendant further understands that, if disgorgement is ordered, Defendant shall pay

prejudgment interest thereon, calculated from September 1, 2020, based on the rate of interest

used by the Internal Revenue Service for the underpayment of federal income tax as set forth in

26 U.S.C. § 6621(a)(2).  Defendant further agrees that in connection with the Commission's

motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a)

Defendant will be precluded from arguing that he did not violate the federal securities laws as

alleged in the complaint; (b) Defendant may not challenge the validity of this Consent or the

Judgment; (c) solely for the purposes of such motion, the allegations of the complaint shall be

accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.  In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

5.      Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

6.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Judgment.

7.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8.      Defendant agrees that this Consent shall be incorporated into the Judgment with the same force and effect as if fully set forth therein.

9.      Defendant will not oppose the enforcement of the Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.     Defendant waives service of the Judgment and agrees that entry of the Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Judgment is filed with the Clerk of the Court, with an affidavit or declaration

3

stating that Defendant has received and read a copy of the Judgment.

11. Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

12. Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant acknowledges the guilty plea for related conduct described in paragraph 2 above, and: (i) will not take any action or make or permit to be

4

made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19). If Defendant breaches this agreement, the Commission may petition the Court to vacate the Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14. In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

15. Defendant agrees that the Commission may present the Judgment to the Court for signature and entry without further notice.

16. Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Judgment.

Dated: 5|23|22                        _____
                                       William Tomita

On May 23, 2022, William Tomita, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

_____
Notary Public
Commission expires:



NORMAN T. FROSCHER
Notary Public
State of Florida
Comm# HH215092
Expires 2/10/2026

6

Approved as to form:

Helen V. Cantwell, Esq.
Debevoise & Plimpton LLP
919 Third Ave.
New York, NY 10022

Attorney for Defendant

# EXHIBIT A

XM4MKTOMS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                          22 CR 231 (LTS)

5  WILLIAM TOMITA,

6               Defendant.

7  ------------------------------x

8                                      New York, N.Y.
                                       April 22, 2022
9                                      2:35 p.m.
   Before:
10
                   HON. LAURA TAYLOR SWAIN,
11
                                       District Judge
12
                        APPEARANCES
13

14 DAMIAN WILLIAMS
       United States Attorney for the
15     Southern District of New York
   MATTHEW D. PODOLSKY
16 ANDREW M. THOMAS
       Assistant United States Attorneys
17
   HELEN V. CANTWELL
18 ADELE STICHEL
       Attorneys for Defendant
19
   ALSO PRESENT:
20
   MARLON OVALLES, Pretrial Services
21 ANDREAS ECONOMOU-ELLISON, FBI

22

23

24

25

XM4MKTOMS

1        (Case called)

2        THE COURT:  Good afternoon.

3        Counsel, agents, pretrial services officer, would you

4  please introduce yourselves.

5        MR. PODOLSKY:  Good afternoon, your Honor.  Matthew

6  Podolsky and Andrew Thomas, for the government.  And with us at

7  counsel table is Special Agent Andreas Economou-Ellison, of the

8  Federal Bureau of Investigation.

9        THE COURT:  Good afternoon, Mr. Podolsky, Mr. Thomas,

10  and Special Agent Economou-Ellison.  You may be seated.

11        MR. THOMAS:  Good afternoon, your Honor.

12        MR. OVALLES:  Marlon Ovalles, on behalf of pretrial

13  services.  Good afternoon, your Honor.

14        THE COURT:  Good afternoon, Officer Ovalles.  You may

15  be seated.

16        MS. CANTWELL:  Good afternoon, your Honor.  Helen

17  Cantwell and Adele Stichel, from Debevoise & Plimpton, on

18  behalf of Mr. Tomita.  Nice to see you.

19        THE COURT:  Nice to see you.

20        Good afternoon, Ms. Cantwell; good afternoon,

21  Ms. Stichel; and good afternoon, Mr. Tomita.

22        Is the gentleman in the back of the courtroom with

23  either of the parties?

24        MR. PODOLSKY:  Yes, your Honor.  I can represent that

25  he is also a special agent with the FBI.

XM4MKTOMS

1          THE COURT:  Thank you.

2          Good afternoon, sir.

3          I have received a sealed application for an order

4     maintaining this case under seal, providing that the

5     documentation and docket entries in this case be kept under

6     seal, and that the case be captioned on the docket as United

7     States v. John Doe.  That, of course, also implicates the

8     sealed filing until further order of the Court of the

9     transcript of these proceedings.

10          Ms. Cantwell, is there any objection to the

11     application?

12          MS. CANTWELL:  No, your Honor.

13          THE COURT:  I've read it thoroughly and conclude that

14     it does set forth appropriate grounds for holding this

15     information from public access, given certain law enforcement

16     considerations.  So I am granting it.  I note that it provides

17     for an update within three months concerning the continuing

18     need, if any, to maintain these materials under seal.

19          So, Ms. Ng, have we been given a signature copy?

20          THE DEPUTY CLERK:  Of what, the advice of rights?

21          THE COURT:  Well, no.  This is the sealing order.  The

22     copy that I have just has a printed S --

23          THE DEPUTY CLERK:  I'll give it to you.  Sorry.

24          (Pause)

25          THE COURT:  So that is the order.  Great.  Thank you.

XM4MKTOMS

1    I will sign it now.

2            I have signed the order.

3            It is my understanding that, today, we are here for a

4    first appearance and anticipated waiver of indictment,

5    arraignment, and plea proceeding.

6            Is that correct?

7            MR. PODOLSKY:  Yes, your Honor.

8            MS. CANTWELL:  Yes, your Honor.

9            THE COURT:  Thank you.

10           First, I must share with you some important

11   information.  Federal Rule of Criminal Procedure 5(f) requires

12   the Court to remind the parties orally and in writing of the

13   prosecution's obligations under the Supreme Court's 1963 *Brady*

14   *v. Maryland* decision and the cases that have built upon that

15   decision and of the possible consequences of violating those

16   obligations.

17           I hereby direct the government to comply with its

18   obligations under *Brady v. Maryland* and its progeny to disclose

19   to the defense all information, whether admissible or not, that

20   is favorable to the defendant, material either to guilt or to

21   punishment, and known to the government.  Possible consequences

22   for noncompliance may include dismissal of individual charges

23   or the entire case, exclusion of evidence, and professional

24   discipline or court sanctions on the attorneys responsible.

25           I will enter a written order more fully describing

XM4MKTOMS

1    this obligation and the possible consequences of failing to

2    meet it, and I direct the government to review and comply with

3    that order.

4          Mr. Podolsky, do you and your colleagues understand

5    these obligations, and do you confirm that they have been

6    fulfilled or will be fulfilled?

7          MR. PODOLSKY:  Yes, your Honor, I can represent that

8    the government understands its obligations and will comply with

9    them as required in this case.

10          THE COURT:  Thank you.

11          I will now turn to the first appearance.  And I inform

12    counsel that the arraignment on the information and the waiver

13    of indictment will be addressed as part of the anticipated plea

14    allocution colloquy.

15          So, first, Mr. Tomita, would you please stand.

16          Thank you.

17          Please state your full name.

18          THE DEFENDANT:  My full name is William Kenji Tomita,

19    your Honor.

20          THE COURT:  How old are you, sir?

21          THE DEFENDANT:  Thirty-eight years old.

22          THE COURT:  I will now explain to you certain rights

23    that you have under the Constitution of the United States.  You

24    have the right to remain silent; you need not make any

25    statement.  Even if you've already made statements to the

XM4MKTOMS

1  authorities, you need not make any additional statements.  Any

2  statements that you do make can be used against you.

3          Do you understand these rights?

4          THE DEFENDANT:  I understand, your Honor.

5          THE COURT:  You have the right to be released, either

6  conditionally or unconditionally, pending trial unless I find

7  that there are no conditions that would reasonably assure your

8  presence at future court hearings and the safety of the

9  community.  If the government were to ask me to detain you

10  pending trial, you are entitled to a prompt hearing on whether

11  such conditions exist.

12          Do you understand this right?

13          THE DEFENDANT:  I understand, your Honor.

14          THE COURT:  Are you a citizen of the United States?

15          THE DEFENDANT:  That is correct.

16          THE COURT:  Are you also a citizen of any other

17  country?

18          THE DEFENDANT:  I'm a dual national of Japan, your

19  Honor.

20          THE COURT:  Because of your dual nationality, you are

21  entitled to have Japan's consular representatives here in the

22  United States notified that you have been arrested or detained.

23  After your consular officials are notified, they may call or

24  visit you.  You are not required to accept their assistance,

25  but they may be able to help you with legal counsel and may

XM4MKTOMS

1   contact your family and visit you if you are detained, among

2   other things.

3           I now direct the Office of the United States Attorney

4   to make the appropriate consular notification if you request

5   that that be made.

6           THE DEFENDANT:  Thank you, your Honor.

7           THE COURT:  Mr. Podolsky will do that if there is a

8   request.

9           MR. PODOLSKY:  Correct.

10          THE COURT:  Thank you.

11          Mr. Tomita, you have the right to be represented by an

12  attorney today and at all future proceedings in this case, and

13  if you are unable to afford an attorney, I will appoint an

14  attorney to represent you.

15          Do you understand these rights?

16          THE DEFENDANT:  I do, your Honor.  Thank you.

17          THE COURT:  Do you wish to have, and are you able to

18  obtain and afford, counsel on your own?

19          THE DEFENDANT:  That is correct, your Honor.

20          THE COURT:  Have you retained Ms. Cantwell and her

21  firm, Debevoise & Plimpton, to represent you in this case?

22          THE DEFENDANT:  That is correct, your Honor.

23          THE COURT:  Do you understand that you're responsible

24  for paying the fees and expenses associated with Ms. Cantwell's

25  defense of you in this case?

XM4MKTOMS

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  And, for the record, do you want the Court

3       to appoint counsel for you?

4              THE DEFENDANT:  Not at this time, your Honor.  Thank

5       you.

6              THE COURT:  Thank you.  You may be seated.

7              I would ask that Ms. Cantwell remain standing.

8              I'm informed that Mr. Tomita has an application to

9       waive indictment and enter a plea of guilty to the five-count

10      superseding information that is labeled United States v.

11      William Tomita.

12             Is that correct, Ms. Cantwell?

13             MS. CANTWELL:  Yes, your Honor.

14             THE COURT:  And is this plea pursuant to an agreement

15      with a printed date of April 15, 2022, and an execution date of

16      April 22, 2022, which has been marked as Government Exhibit 1

17      in its executed form?

18             MS. CANTWELL:  Yes, your Honor.

19             THE COURT:  Thank you.

20             And do you have that marked copy of the agreement

21      there at defense table?

22             MS. CANTWELL:  Yes.

23             THE COURT:  Thank you.

24             Is there an executed Advice of Rights Form that has

25      been marked as Court Exhibit 1?

9

XM4MKTOMS

1          MS. CANTWELL:  Yes, your Honor.

2          THE COURT:  Do you have that at defense table as well?

3          MS. CANTWELL:  I do.

4          THE COURT:  Thank you, Ms. Cantwell and Ms. Stichel.

5     You can be seated at this time.

6          Mr. Podolsky, would you please make a statement for

7     the record regarding the government's victim identification and

8     notification activities, if any, in connection with this

9     proceeding.

10         MR. PODOLSKY:  Yes, your Honor.

11         We understand our obligations in that respect and will

12    comply with them -- reasonably comply with them under the

13    circumstances of this case.

14         THE COURT:  And I take it that given the particular

15    circumstances of this proceeding, although there may or may not

16    have been victims identified, there would be no notification at

17    this point?

18         MR. PODOLSKY:  To this point in time, that is correct,

19    but we will make reasonable efforts to notify them as we can.

20         THE COURT:  Thank you.  And that is for the reasons

21    that are set forth in the application relating to the sealing

22    of the materials?

23         MR. PODOLSKY:  That's correct, your Honor.

24         THE COURT:  Thank you.

25         Mr. Tomita, before I accept your waiver of indictment

XM4MKTOMS

1   and your guilty plea, there are a number of questions that I

2   must ask you while you are under oath to assure that your

3   waiver and plea are valid.  At times, I may cover a point more

4   than once, and I may cover matters that were also addressed in

5   the Advice of Rights Form that you have seen.  If I do, that

6   will be because it is very important that you understand what

7   is happening here today.

8           In that connection, if you don't understand something

9   that I ask you, please say so, and I will reword the question

10  or you may speak with your attorney.  Do you understand that?

11          THE DEFENDANT:  I do, your Honor.  Thank you.

12          THE COURT:  Thank you.

13          Please stand now to take the oath.

14          (Defendant sworn)

15          THE COURT:  Please remain standing, but put your hand

16  down.

17          Please, again, state your full name for the record.

18          THE DEFENDANT:  My full name is William Kenji Tomita.

19          THE COURT:  Mr. Tomita, do you understand that you

20  have solemnly promised to tell the truth, and that if you

21  answer any of my questions falsely, your false or untrue

22  answers may later be used against you in another prosecution

23  for perjury, or making a false statement?

24          THE DEFENDANT:  I understand, your Honor.

25          THE COURT:  Thank you.  You can be seated for the next

XM4MKTOMS

1    portion of the proceeding.

2              THE DEFENDANT:  Thank you.

3              THE COURT:  You are 38 years old; is that correct?

4              THE DEFENDANT:  Correct.

5              THE COURT:  How far did you go in school?

6              THE DEFENDANT:  I finished a four-year Bachelor's

7    program.

8              THE COURT:  In what field?

9              THE DEFENDANT:  In economics and international

10   studies.

11             THE COURT:  Are you able to read, speak, and

12   understand the English language well?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And you are a citizen of both the United

15   States and of Japan?

16             THE DEFENDANT:  That is correct, your Honor.

17             THE COURT:  How did you become a citizen of the United

18   States?

19             THE DEFENDANT:  By birth, your Honor.

20             THE COURT:  Are you now, or have you recently been,

21   under the care of a doctor or a psychiatrist?

22             THE DEFENDANT:  I have in the past, your Honor.

23             THE COURT:  Are you currently suffering from any

24   conditions for which you are under treatment?

25             THE DEFENDANT:  I do have anxiety related to public

XM4MKTOMS

1    speaking, your Honor.

2         THE COURT:  Does that condition affect you today in

3    terms of your ability to understand and respond to information

4    here in court?

5         THE DEFENDANT:  No, your Honor.

6         THE COURT:  Are you taking any medication that would

7    affect negatively your ability to understand and respond to

8    information?

9         THE DEFENDANT:  I took a Xanax, per my doctor's

10   prescription, just because of my fear of public speaking, but

11   that will not prevent me from public speaking.

12        THE COURT:  And so do you feel comfortable speaking in

13   the courtroom today?

14        THE DEFENDANT:  Yes, I do, very comfortable right now.

15   Thank you.

16        THE COURT:  Do you feel comfortable making important

17   decisions for yourself today?

18        THE DEFENDANT:  I do, your Honor.

19        THE COURT:  Have you ever been hospitalized for any

20   mental illness or treated or hospitalized for any type of

21   addiction, including drug or alcohol addiction?

22        THE DEFENDANT:  I have not, your Honor.

23        THE COURT:  In the past 24 hours, have you taken any

24   drugs, medicine, or pills or had any alcohol to drink?

25        THE DEFENDANT:  No, your Honor.

XM4MKTOMS

1         THE COURT:  Other than the prescribed medication that

2    you just mentioned?

3         THE DEFENDANT:  Correct, your Honor.

4         THE COURT:  Have you ever been addicted to any drugs

5    or alcohol?

6         THE DEFENDANT:  I have not, your Honor.

7         THE COURT:  Is your mind clear today?

8         THE DEFENDANT:  It is, your Honor.

9         THE COURT:  Are you feeling well physically today?

10        THE DEFENDANT:  Yes, your Honor.

11        THE COURT:  Are you represented by lawyers here today?

12        THE DEFENDANT:  Yes, your Honor.

13        THE COURT:  And what are your lawyers' names?

14        THE DEFENDANT:  Helen Cantwell and Adele Stichel, from

15   Debevoise, your Honor.

16        THE COURT:  Thank you.

17        Ms. Cantwell, Ms. Stichel, do either of you have any

18   doubt as to Mr. Tomita's competence to waive indictment and

19   plead guilty at this time?

20        MS. CANTWELL:  No, your Honor.

21        MS. STICHEL:  No.

22        THE COURT:  Thank you.

23        Mr. Podolsky, Mr. Thomas, does either of you have any

24   doubt as to Mr. Tomita's competence to waive indictment and

25   plead guilty?

XM4MKTOMS

1          MR. PODOLSKY:  No, your Honor.

2          MR. THOMAS:  No, your Honor.

3          THE COURT:  Mr. Tomita, your attorney has informed me

4    that you want to waive indictment and enter a plea of guilty to

5    a five-count superseding information.

6          Do you wish to waive indictment and plead guilty?

7          THE DEFENDANT:  That is correct, your Honor.

8          THE COURT:  Have you fully discussed your case with

9    your attorneys, including the charges to which you intend to

10   plead guilty, and any defenses that you may have to those

11   charges?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Have you and your attorneys also discussed

14   the consequences of pleading guilty?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Are you satisfied with your attorneys and

17   their representation of you?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  On the basis of Mr. Tomita's responses to

20   my questions and my observations of his demeanor, I find that

21   he is fully competent to waive indictment and enter an informed

22   plea at this time.

23         Before I accept your waiver of indictment and plea,

24   sir, I'm going to ask you some additional questions.  These

25   questions are intended to satisfy the Court that you want to

XM4MKTOMS

1    plead guilty because you are, in fact, guilty and that you

2    fully understand your rights and the consequences of your plea.

3            I am now going to describe to you certain rights that

4    you have under the Constitution and laws of the United States.

5    You will be giving up these rights if you plead guilty.  Please

6    listen carefully.  If you don't understand something that I'm

7    saying or describing, stop me, and I or your attorney will

8    explain it more fully.

9            Under the Constitution and laws of the United States,

10   you have the right to a speedy and public trial by a jury on

11   the charges against you that are set out in the superseding

12   information.

13           Do you understand that?

14           THE DEFENDANT:  I do, your Honor.

15           THE COURT:  Do you understand that you have the right

16   to plead not guilty, and to continue to plead not guilty to

17   each of the charges?

18           THE DEFENDANT:  I do, your Honor.

19           THE COURT:  If there were a trial, you would be

20   presumed innocent, and the government would be required to

21   prove you guilty by competent evidence and beyond a reasonable

22   doubt.  You would not have to prove that you were innocent at a

23   trial.

24           Do you understand that?

25           THE DEFENDANT:  I understand that, your Honor.

XM4MKTOMS

1          THE COURT:  If there were a trial, a jury composed of

2     12 people selected from this district would have to agree

3     unanimously in order to find you guilty.  Do you understand

4     that?

5          THE DEFENDANT:  I understand, your Honor.

6          THE COURT:  If there were a trial, and at all stages

7     leading up to it, you would have the right to be represented by

8     an attorney, and if you could not afford one, an attorney would

9     be provided to you free of cost.

10          Do you understand that?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  If there were a trial, you would have the

13     right to see and hear all of the witnesses against you, and

14     your attorney could cross-examine them.  In addition, you would

15     have the right to have your attorney object to the government's

16     evidence and offer evidence on your behalf if you so desired.

17     You would also have the right to have witnesses required to

18     come to court to testify in your defense, and you would have

19     the right to testify yourself, but you would not be required to

20     testify.

21          Do you understand all of that?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Do you understand that, if there were a

24     trial, and you decided not to testify, no adverse inference

25     could be drawn against you based on your decision not to

XM4MKTOMS

1    testify?

2            THE DEFENDANT:  I understand, your Honor.

3            THE COURT:  Do you understand that if you were

4    convicted at a trial, you would have the right to appeal that

5    verdict?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Do you understand each and every one of

8    the rights that I have asked you about?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  Do you have any questions about any of

11   these rights?

12           THE DEFENDANT:  I do not, your Honor.

13           THE COURT:  Do you understand that by pleading guilty

14   today, you will be giving up each and every one of these

15   rights?

16           THE DEFENDANT:  I understand that, your Honor.

17           THE COURT:  Do you also understand that you will be

18   giving up any possible claim that your constitutional rights

19   may have been violated?

20           THE DEFENDANT:  I understand that, your Honor.

21           THE COURT:  And do you understand that if you plead

22   guilty today, you will not have a trial?

23           THE DEFENDANT:  I understand that, your Honor.

24           THE COURT:  Do you understand that by pleading guilty,

25   you will also have to give up your right not to incriminate

XM4MKTOMS

1  yourself because I will ask you questions about what you did in

2  order to satisfy myself that you are guilty as charged, and you

3  will have to admit and acknowledge your guilt?

4          THE DEFENDANT:  I understand that, your Honor.

5          THE COURT:  Do you understand that you can change your

6  mind right now and refuse to plead guilty; you don't have to

7  enter this plea if you don't want to for any reason.

8          Do you understand that fully?

9          THE DEFENDANT:  I understand that fully, your Honor.

10          THE COURT:  And do you still want to plead guilty?

11          THE DEFENDANT:  Yes, I would like to proceed, your

12  Honor.

13          THE COURT:  The document that contains the charges to

14  which you've indicated you wish to plead guilty is called a

15  superseding information.  It has been issued by the United

16  States Attorney.  You have a constitutional right to be charged

17  by an indictment rather than an information.  An indictment

18  would be a charge issued from a grand jury.

19          Do you understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Ms. Cantwell, would you please show

22  Mr. Tomita the waiver of indictment form.

23          MS. CANTWELL:  He has it, your Honor.

24          THE COURT:  Thank you.

25          Mr. Tomita, have you signed this form?

XM4MKTOMS

1          THE DEFENDANT:  I have, your Honor.

2          THE COURT:  Did you read it before you signed it?

3          THE DEFENDANT:  I did, your Honor.

4          THE COURT:  Did you discuss it with your attorney

5     before you signed it?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And did you fully understand it before you

8     signed it?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Do you understand that if you do not waive

11    indictment, if the government wants to prosecute you on the

12    particular charges that are in the superseding information, the

13    government would have to present the charges to a grand jury,

14    which might or might not indict you on them?

15         THE DEFENDANT:  I understand that, your Honor.

16         THE COURT:  Do you understand that you're under no

17    obligation to waive indictment?

18         THE DEFENDANT:  I understand that, your Honor.

19         THE COURT:  And do you understand that by signing the

20    waiver of indictment, you are giving up your right to have

21    these charges presented to a grand jury?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Do you understand what a grand jury is?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Has anyone given you anything or made any

XM4MKTOMS

1      threats or promises to you to get you to waive indictment?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Have you seen a copy of the superseding

4      information, which is captioned United States of America v.

5      William Tomita?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Have you read it?

8              THE DEFENDANT:  Several times, your Honor.

9              THE COURT:  Have you discussed it with your attorney?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Do you understand the charges against you

12     that are detailed in that information?

13             THE DEFENDANT:  I do, your Honor.

14             THE COURT:  If you want me to, I will read the

15     information out loud now here in full to you in court.

16             Would you like me to read it out loud to you in court?

17             THE DEFENDANT:  For me, that's not necessary, your

18     Honor.

19             THE COURT:  Then it's not necessary for me, if it's

20     not necessary for you.

21             THE DEFENDANT:  Okay.

22             THE COURT:  Thank you.  You've waived the public

23     reading.

24             I find that Mr. Tomita's waiver of indictment is

25     knowing and voluntary.  It is accepted and so ordered.

XM4MKTOMS

1          I will now, however, ask you summary questions about
2     the charges in the information.
3          So, first, do you understand that Count One of the
4     information charges you with violating Title 18 of the United
5     States Code, Section 1962(d) by willfully and knowingly being
6     part of a conspiracy, from at least in or about 2020 up to and
7     including in or about March 2021, to violate the racketeering
8     laws of the United States by conducting and participating,
9     directly and indirectly, in the affairs of what the superseding
10    information defines as the Archegos Enterprise through a
11    pattern of activity consisting of multiple offenses involving
12    fraud in the sale of securities, and that's indictable under
13    Title 18 Section 1343, relating to wire fraud, and that this
14    count charges that it was part of the conspiracy that you
15    agreed that a conspirator would commit at least two acts of
16    racketeering activity in the conduct of the affairs of the
17    Archegos Enterprise?
18               I always need you to answer in words.
19               THE DEFENDANT:  Sorry.  The question --
20               THE COURT:  So do you understand that that is the
21    charge?
22               THE DEFENDANT:  I understand that's the charge, yes,
23    your Honor.
24               THE COURT:  Thank you.
25               Do you understand that Count Two charges you with

XM4MKTOMS

1    violating Title 17 of the Code of Federal Regulations,

2    Section 240.10b-5, Title 15 of the United States Code, Sections

3    78j(b) and 78ff, and Section 2 of Title 18 of the United States

4    Code, by engaging in and aiding and abetting a scheme to

5    secretly amass market power in numerous securities traded on

6    United States securities exchanges, and to use that market

7    power and manipulative and abusive trading techniques for the

8    purpose of fraudulently altering the prices of those

9    securities, from at least in or about 2020 up to and including

10   at least in or about March of 2021?

11          THE DEFENDANT:   That is correct, your Honor, I

12   understand it.

13          THE COURT:   So you understand that that is the charge?

14          THE DEFENDANT:   I understand that that's the charge,

15   correct.

16          THE COURT:   Thank you.

17          Do you understand that Count Three charges you with

18   violating Title 15 of the United States Code, Sections

19   78i(a)(2) and 78ff, as well as Title 18, Section 2, by engaging

20   in and aiding and abetting a series of transactions in

21   securities and securities-based swaps underlying certain of

22   Archegos' positions in order to raise or depress the price of

23   and induce others to purchase those securities, from at least

24   in or about 2020 up to and including at least in or about March

25   of 2021?

XM4MKTOMS

1          THE DEFENDANT:  I understand it, your Honor.

2          THE COURT:  Do you understand that Count Four charges

3     you with violating Title 15 of the United States Code, Sections

4     78j(b) and 78ff, Title 17, CFR, Section 240.10b-5, and Title 18

5     of the United States Code, Section 2, by engaging in and aiding

6     and abetting a scheme to defraud Archegos' counterparties

7     through false and misleading statements regarding aspects of

8     Archegos' business, portfolio, and assets, from at least in or

9     about 2020 up to and including at least in or about March of

10    2021?

11         THE DEFENDANT:  I understand what it means, your

12    Honor.

13         THE COURT:  Do you understand that -- when you say you

14    understand what it means, you understand what the charge

15    written in the information means?

16         THE DEFENDANT:  Yes, I understand what the charge is

17    and agree to the charge.

18         That's the question, right?

19         THE COURT:  Yes, the question is:  Do you understand

20    what you're charged with?

21         THE DEFENDANT:  Yes, I understand what I'm charged

22    with.

23         THE COURT:  Thank you.

24         THE DEFENDANT:  The one we just read, I understand it.

25         THE COURT:  Yes, thank you.  So we have one more now.

XM4MKTOMS

1          Do you understand that Count Five charges you with

2     violating Title 18 of the United States Code, Sections 1343 and

3     2, by engaging in and aiding and abetting a scheme to defraud

4     Archegos' counterparties of their rights to control their

5     assets, and thereby exposing Archegos' counterparties to risk

6     of economic harm by false and misleading statements regarding

7     aspects of Archegos' business, portfolio, and assets, including

8     statements conveyed through interstate wires, from in or about

9     2020 up to and including in or about March 2021?

10          THE DEFENDANT:  I understand the charge, your Honor.

11          THE COURT:  Thank you.

12          Do you understand that the government would have to

13     prove each and every part, or element, of each of these charges

14     beyond a reasonable doubt at a trial if you did not plead

15     guilty?

16          THE DEFENDANT:  I understand that, your Honor.

17          THE COURT:  Thank you.

18          Mr. Podolsky, would you please explain what the

19     government would have to prove if we were to go to trial on the

20     charges in the superseding information.

21          MR. PODOLSKY:  Yes, your Honor.

22          As to Count One, racketeering conspiracy, the

23     government would have to prove beyond a reasonable doubt:

24          First, that the enterprise alleged in the indictment

25     existed;

XM4MKTOMS

1          Second, that the enterprise affected interstate or

2    foreign commerce;

3          Third, that the defendant was associated with, or was

4    employed by, the enterprise;

5          And, fourth, that the defendant knowingly and

6    willfully conspired with at least one other person to

7    participate in the conduct of the affairs of the enterprise

8    through a pattern of racketeering activity.

9          I will note that the racketeering activities -- the

10   predicate racketeering activities are alleged in paragraph 2 of

11   the information, and your Honor has already read them just a

12   few moments ago.

13         As to both Counts Two and Four, which both charge

14   Title 15 securities fraud, the government would have to prove

15   beyond a reasonable doubt:

16         First, that in connection with the purchase or sale of

17   a security, the defendant did any one or more of the following:

18         First, employed a device, scheme, or artifice to

19   defraud;

20         Or second, made an untrue statement of a material

21   fact, or omitted to state a material fact, which made what was

22   said under the circumstances misleading;

23         Or, third, engaged in an act, practice, or course of

24   business that operated or would operate as a fraud or deceit

25   upon a purchaser or seller;

XM4MKTOMS

1      Second, that the defendant acted willfully, knowingly,

2  and with the intent to defraud;

3      And, third, that the defendant knowingly used or

4  caused to be used any means or instruments of transportation or

5  communication in interstate commerce or the use of the mails in

6  furtherance of the fraudulent conduct.

7      As to Count Three, market manipulation, the government

8  would have to prove beyond a reasonable doubt:

9      First, that the defendant effected a series of

10  transactions in a security;

11      Second, that the series of transactions either

12  created -- either (a) created actual or apparent active trading

13  in the security, or (b) raised or depressed the price of the

14  security;

15      Third, that the conduct involved, directly or

16  indirectly, the use of the mails, any means of interstate

17  commerce, or any facility of a national securities exchange;

18      And, fourth, that the defendant acted willfully and

19  with the purpose of inducing the purchase or sale of a security

20  by others.

21      As to Count Five, wire fraud, the government would

22  have to prove beyond a reasonable doubt:

23      First, that there was a scheme or artifice to defraud

24  or to obtain money or property by materially false and

25  fraudulent pretenses, representations, or promises;

XM4MKTOMS

1            Second, that the defendant knowingly and willfully

2    participated in a scheme or artifice to defraud with knowledge

3    of its fraudulent intent and with the specific intent to

4    defraud;

5            And, third, that in the execution of the scheme, the

6    defendant used or caused the use of interstate or foreign

7    wires, such as telephone calls, emails, or the transmission of

8    money through the use of wire transfers.

9            The government would also have to prove venue in the

10   Southern District of New York by a preponderance of the

11   evidence as to each count.

12           THE COURT:  Thank you, Mr. Podolsky.

13           Mr. Tomita, do you understand what the government

14   would have to prove if you did not plead guilty to these

15   charges?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Do you understand that the maximum

18   possible penalty for the crime charged in Count One is 20 years

19   of imprisonment, plus a fine of the greatest of $250,000, twice

20   the gain resulting from the offense, or twice the loss to other

21   people resulting from the offense, plus a $100 special

22   assessment, plus three years of supervised release after your

23   term of imprisonment, plus full restitution to all persons

24   injured by your criminal conduct?

25           THE DEFENDANT:  I understand that, your Honor.

XM4MKTOMS

1          THE COURT:  Do you understand that the maximum

2    possible penalty for the crimes charged in each of Counts Two

3    and Four is 20 years of imprisonment, plus a fine of the

4    greatest of $5 million, twice the gain resulting from the

5    offense, or twice the loss to other people resulting from the

6    offense, plus a $100 special assessment, plus three years of

7    supervised release after your term of imprisonment, plus full

8    restitution to all persons injured by your criminal conduct?

9          THE DEFENDANT:  I understand that, your Honor.

10          THE COURT:  Do you understand that the maximum

11    possible penalty for the crime charged in Count Three is

12    20 years of imprisonment, plus a fine of the greatest of

13    $5 million, twice the gain resulting from the offense, or twice

14    the loss to other people resulting from the offense, plus a

15    $100 special assessment, plus three years of supervised release

16    after your term of imprisonment, plus full restitution to all

17    persons injured by your criminal conduct?

18          THE DEFENDANT:  I understand that, your Honor.

19          THE COURT:  Do you understand that the maximum

20    possible penalty for the crime charged in Count Five is

21    20 years of imprisonment, plus a fine of the greatest of

22    $250,000, twice the gain resulting from the offense, or twice

23    the loss to other people resulting from the offense, plus a

24    $100 special assessment, plus three years of supervised release

25    after your term of imprisonment, plus full restitution to all

XM4MKTOMS

1    persons injured by your criminal conduct?

2            THE DEFENDANT:  I understand that, your Honor.

3            THE COURT:  Do you understand that the maximum

4    possible combined penalty for the five crimes to which you

5    propose to plead guilty is 100 years of imprisonment, plus a

6    fine of $15,500,000, or, if greater, the sums of the relevant

7    gains, losses, and statutory amounts associated with your

8    offenses, plus full restitution to all persons injured by your

9    criminal conduct, plus a total of $500 as the mandatory special

10   assessment, plus supervised release for three years after your

11   term of imprisonment?

12           THE DEFENDANT:  I understand that, your Honor.

13           THE COURT:  I will now give you some information and

14   verify your understanding of the supervised release aspect of

15   the potential penalty.

16           Supervised release means that you will be subject to

17   monitoring when you are released from prison.  Terms and

18   conditions will be imposed.  If you violate any of the set

19   terms and conditions, you can be sent back to prison without a

20   jury trial.

21           If you are on supervised release, and you do not

22   comply with any of the set terms or conditions, you can be sent

23   pack to prison for up to two years.  You will be given no

24   credit for the time that you served in prison as a result of

25   your sentence and no credit for any time spent on postrelease

XM4MKTOMS

1   supervision.  So, for example, if you received a prison term

2   and then a three-year term of supervised release, and, after

3   you left prison, you lived up to the terms of supervised

4   release for almost three years, but then you violated some term

5   of the supervised release, you could be sent to prison for two

6   whole years.

7            Do you understand that?

8            THE DEFENDANT:  I understand that, your Honor.

9            THE COURT:  Do you also understand that if I accept

10  your guilty plea and adjudge you guilty, that adjudication may

11  deprive you of valuable civil rights, such as the right to

12  vote, the right to hold public office, the right to serve on a

13  jury, and the right to possess any kind of firearm?

14           THE DEFENDANT:  I understand that, your Honor.

15           THE COURT:  Do you understand that there are

16  sentencing guidelines that the Court must consider in

17  determining your sentence?

18           THE DEFENDANT:  I do, your Honor.

19           THE COURT:  Have your attorneys discussed the

20  sentencing guidelines with you?

21           THE DEFENDANT:  They have, your Honor.

22           THE COURT:  Do you understand that in determining your

23  sentence, the Court must calculate the applicable sentencing

24  guidelines range and consider that range, possible departures

25  under the sentencing guidelines, and other sentencing factors

XM4MKTOMS

1  under Title 18 of the United States Code, Section 3553(a)?

2          THE DEFENDANT:  I understand that, your Honor.

3          THE COURT:  Do you understand that if your attorneys

4  or anyone else has attempted to estimate or predict what your

5  sentence will be, their estimate or prediction could be wrong?

6          THE DEFENDANT:  I do, your Honor.

7          THE COURT:  Do you also fully understand that even if

8  your sentence is different from what your attorneys or anyone

9  else told you it might be, or if it is different from what you

10  expect, you will still be bound to your guilty plea, and you

11  will not be allowed to withdraw your guilty plea?

12          THE DEFENDANT:  I understand that, your Honor.

13          THE COURT:  Do you understand that the sentence to be

14  imposed will be determined solely by the Court, and that I can

15  only determine the sentence to be imposed after the probation

16  office prepares a presentence report?

17          THE DEFENDANT:  I understand that, your Honor.

18          THE COURT:  Do you understand that the Court has

19  discretion, while taking into account the specific provisions

20  and policy statements in the guidelines, to sentence you to any

21  period of imprisonment between time served, at the low end of

22  the range, and the 100-year combined statutory maximums, at the

23  high end?

24          THE DEFENDANT:  I understand this, your Honor.

25          THE COURT:  Are you now serving any state or federal

XM4MKTOMS

1 sentence, or are you being prosecuted for any other crime?

2     THE DEFENDANT:  No, your Honor.

3     THE COURT:  Do you understand that in connection with

4 Count One, the information also includes a forfeiture

5 allegation, in which the government asserts that you are

6 required to forfeit to the United States any interest acquired

7 or maintained in violation of Title 18 of the United States

8 Code, Section 1963, any interest in, security of, claim

9 against, or property or contractual right of any kind affording

10 a source of influence over any enterprise which you and your

11 coconspirators established, operated, controlled, conducted, or

12 participated in the conduct of, in violation of Title 18,

13 Section 1962, and any property constituting or derived from any

14 proceed obtained, directly or indirectly, from the racketeering

15 activity charged in Count One?

16     THE DEFENDANT:  I understand this, your Honor.

17     THE COURT:  Do you understand that in connection with

18 Counts Two through Five, the information includes an additional

19 forfeiture allegation, in which the government asserts that you

20 are required to forfeit to the United States any and all

21 property, real and personal, that constitutes or is derived

22 from proceeds traceable to the commission of the offenses

23 charged in those counts, including, but not limited to, a sum

24 of money in United States currency representing the amount of

25 proceeds traceable to the commission of those offenses?

XM4MKTOMS

1          THE DEFENDANT:  I understand this, your Honor.

2          THE COURT:  Would you please look again at your

3    agreement, which has been marked as Government Exhibit 1.

4          Have you signed this agreement?

5          THE DEFENDANT:  Yes, I have, your Honor.

6          THE COURT:  Did you read it before you signed it?

7          THE DEFENDANT:  I did, your Honor.

8          THE COURT:  Did you discuss it with your attorney

9    before you signed it?

10          THE DEFENDANT:  Yes, I did, your Honor.

11          THE COURT:  Did you fully understand the agreement

12   before you signed it?

13          THE DEFENDANT:  That is correct, your Honor.

14          THE COURT:  Does the agreement reflect accurately your

15   complete and total understanding of the entire agreement

16   between the government, your attorney, and you?

17          THE DEFENDANT:  It does, your Honor.

18          THE COURT:  Is everything that you understand about

19   your plea, cooperation, and sentence covered in the agreement?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Has anything been left out?

22          THE DEFENDANT:  No, I do not believe so, your Honor.

23          THE COURT:  Has anyone made any promises to you, other

24   than what is written in that agreement, or threatened you or

25   forced you or given you anything to get you to plead guilty or

XM4MKTOMS

1    enter into the agreement?

2            THE DEFENDANT:  None of the above, your Honor.

3            THE COURT:  Do you understand that even if the

4    government does not oppose or take a position on what your

5    attorney will ask as a sentence, I am free to impose whatever

6    sentence I believe is appropriate under the circumstances and

7    the applicable law, and you will have no right to withdraw your

8    plea?

9            THE DEFENDANT:  I fully understand that, your Honor.

10           THE COURT:  Do you understand that the agreement

11   provides that you must cooperate fully with the Office of the

12   United States Attorney, the Federal Bureau of Investigation,

13   and any other law enforcement agency designated by the United

14   States Attorney?

15           THE DEFENDANT:  I understand that, your Honor.

16           THE COURT:  Do you understand that the agreement does

17   not bind any federal, state, or local prosecuting authority,

18   other than the United States Attorney?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  Do you understand that the agreement

21   provides that, if the United States Attorney determines that

22   you have provided substantial assistance in an investigation or

23   prosecution, and if you have fully complied with the

24   understandings specified in the agreement, the United States

25   Attorney will file a motion pursuant to Section 5K1.1 of the

XM4MKTOMS

1    sentencing guidelines, requesting that the Court sentence you

2    in light of the factors set forth in Section 5K1.1(a)(1)

3    through (5)?

4              THE DEFENDANT:  I understand that, your Honor.

5              THE COURT:  Do you understand that the factors that

6    the Court may consider under Section 5K1.1 include the

7    significance and usefulness of your assistance, taking into

8    consideration the government's evaluation of your assistance,

9    the truthfulness, completeness, and reliability of any

10   information or testimony you provided, the nature and extent of

11   your assistance, any injury suffered or any danger or risk of

12   injury to you or your family as a result of your assistance,

13   and the timeliness of your assistance?

14             THE DEFENDANT:  I understand that, your Honor.

15             THE COURT:  Do you understand that even if the United

16   States Attorney files such a motion, the sentence to be imposed

17   on you remains within the sole discretion of the Court?

18             THE DEFENDANT:  I understand this, your Honor.

19             THE COURT:  Do you understand that you will not be

20   entitled to withdraw your plea, even if the Court denies the

21   motion?

22             THE DEFENDANT:  I understand that, your Honor.

23             THE COURT:  Do you understand that if the United

24   States Attorney determines that you have not provided

25   substantial assistance in an investigation or prosecution, or

XM4MKTOMS

1    that you have violated any provision of the agreement, the

2    United States Attorney is not obligated to file a motion under

3    Section 5K1.1?

4              THE DEFENDANT:  I understand this, your Honor.

5              THE COURT:  Do you understand that you will not be

6    entitled to withdraw your guilty plea, even if the United

7    States Attorney does not file the motion?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Do you understand that, on page 4, your

10   agreement provides that, if you commit any further crimes, or

11   it is determined that you gave false, incomplete, or misleading

12   testimony or information, or that you otherwise violated any

13   provision of the agreement, you will be subject to prosecution

14   for any federal violations of which the United States Attorney

15   has knowledge, including perjury and obstruction of justice?

16             THE DEFENDANT:  I understand this, your Honor.

17             THE COURT:  Do you understand that, also on page 4,

18   the agreement provides that, if you commit any further crimes,

19   or it is determined that you gave false, incomplete, or

20   misleading testimony or information, or otherwise violated any

21   provision of the agreement, all statements that you have made

22   to the United States Attorney and other designated law

23   enforcement agents, and any testimony that you have given

24   before a grand jury or other tribunal, may be admissible in

25   evidence in any criminal proceedings against you?

XM4MKTOMS

1          Do you understand that?

2          THE DEFENDANT:  I do, your Honor.

3          THE COURT:  Do you understand that your agreement also

4     provides that you may not assert a claim that such statements

5     should be suppressed from evidence, and that you have waived

6     your right to claim that such statements should be suppressed

7     from evidence?

8          THE DEFENDANT:  I do, your Honor.

9          THE COURT:  Do you understand that, on page 2, the

10    plea agreement includes your agreement, with respect to

11    Count One of the information, to forfeit to the United States

12    any interest acquired or maintained as a result of the

13    racketeering activity charged in Count One; any interest in,

14    security of, claim against, or property or contractual right of

15    any kind affording a source of influence over any enterprise

16    which you and your coconspirators established, operated,

17    controlled, conducted, or participated in the conduct of, in

18    violation of Title 18, Section 1962, as charged in Count One;

19    and any property constituting or derived from any proceeds

20    obtained, directly or indirectly, from the racketeering

21    activity charged in Count One?

22          THE DEFENDANT:  I understand this, your Honor.

23          THE COURT:  Do you understand that page 2 of the

24    agreement also includes your agreement with respect to

25    Counts Two through Five of the information to forfeit to the

XM4MKTOMS

1    United States any and all property, real or personal, that

2    constitutes, or is derived from, the commission of the offenses

3    alleged in Counts Two through Five?

4            THE DEFENDANT:  I understand this, your Honor.

5            THE COURT:  Do you understand that any amount that you

6    do forfeit will not be credited toward any fines, restitution,

7    cost of imprisonment, or any other additional penalty that the

8    Court may impose on you?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  Do you understand that, on page 4, the

11   agreement provides that the government will not object to your

12   continued release upon bail conditions to be set, but that the

13   government reserves the right to move for revocation or

14   modification of those conditions without notice to you if it

15   determines that you have violated any provision of your

16   agreement or any release condition, or if it determines that

17   revocation or modification is otherwise appropriate?

18           THE DEFENDANT:  I understand this, your Honor.

19           THE COURT:  Do you still want to plead guilty pursuant

20   to this plea agreement?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  Ms. Cantwell, do you know of any valid

23   reason why Mr. Tomita would prevail at trial?

24           MS. CANTWELL:  No, your Honor.

25           THE COURT:  Do you know of any reason why he should

XM4MKTOMS

```
 1        not be permitted to plead guilty?
 2              MS. CANTWELL:  No, your Honor.
 3              THE COURT:  Mr. Tomita, would you and your attorneys
 4        please stand, and would you tell me what makes you guilty of
 5        each of the crimes to which you are pleading guilty today.
 6              MS. CANTWELL:  And, your Honor, just to be clear, he
 7        is going to read from a prepared statement that we worked on
 8        together.
 9              THE COURT:  Very good.  And I may have some questions
10        for him following the reading of the statement.
11              MS. CANTWELL:  Okay.
12              THE DEFENDANT:  Okay.
13              From March 2020 through March 2021, I was head trader
14        at Archegos Capital Management.  During this time, I and others
15        executed trades that allowed the fund to amass market power and
16        certain securities traded on U.S. exchanges.  Archegos used
17        security-based swaps to gain exposure to these securities while
18        concealing the true size of the fund's positions from the
19        market and our trading counterparties.
20              Once Archegos gained market power in these securities,
21        I and others used this power to trade in such a way as to
22        artificially manipulate the prices of the securities.
23              Acting at the direction of the head of the fund, I
24        traded to increase the prices of names in which Archegos held
25        long positions and reduced the prices of securities in which
```

XM4MKTOMS

1    the fund helped short positions.  I did this by, for example,

2    buying large amounts of a stock when the price dropped in

3    response to negative news or trading premarket when I knew the

4    fund's activity would have a greater impact on price.

5            I manipulated the prices of these securities in order

6    to influence others in the market to buy or sell the securities

7    in ways that would benefit Archegos' key positions and increase

8    Archegos' purchasing power through variation margin.

9            In addition to manipulating the prices of certain

10   securities, I also made misrepresentations to Archegos' trading

11   counterparties.  These counterparties were banks and brokers

12   who extended the fund credit to trade on margin and entered

13   into swap agreements with the fund.

14           I knew that the fund's counterparties considered

15   Archegos' portfolio and assets when setting margin rates and

16   limits on swap capacity.  In order to maintain favorable margin

17   rates and gain additional swap capacity, I made false and

18   misleading statements and omissions regarding the size and the

19   composition of the fund's portfolio.  I knew that doing so

20   would mislead counterparties as to the true risks presented by

21   the fund.  I made these false and misleading statements and

22   omissions during phone calls and email exchanges with

23   representatives from the banks.

24           While engaged in the activities I described, I worked

25   under the supervision of Sung Kook Hwang, also known as Bill

XM4MKTOMS

1    Hwang, the founder and head of Archegos.  I agreed with Bill

2    and others to carry out the business of Archegos through a

3    pattern of manipulating the prices of securities and deceiving

4    counterparties.  I did so knowing that I, Bill, or others

5    committed at least two manipulative or deceptive acts in the

6    course of conducting Archegos' affairs.  I knew that Archegos'

7    trading activity was carried out over interstate wires and

8    affected interstate commerce.

9            I knew this conduct was wrong at the time that I

10   participated in it, and I knew that things I did were illegal.

11           Thank you.

12           THE COURT:  Thank you.

13           Does everything that you have just read to me from

14   those notes truthfully relate your actions and your knowledge

15   at the relevant time?

16           THE DEFENDANT:  Correct, your Honor.

17           THE COURT:  Mr. Podolsky, are there any further

18   factual issues that the government would like addressed in the

19   plea allocution?

20           MR. PODOLSKY:  Just one, your Honor.

21           If you could ask whether any of the activities that

22   Mr. Tomita just described took place in Manhattan or in New

23   York City, just to clarify venue.

24           THE DEFENDANT:  The answer to that question is, yes,

25   some of these activities took place in Manhattan.

XM4MKTOMS

1          THE COURT:  Thank you.

2          Mr. Tomita and your counsel, you can be seated for a

3  moment, and I am going to ask Mr. Podolsky to summarize the

4  government's evidence against Mr. Tomita.

5          MR. PODOLSKY:  Thank you, your Honor.

6          If we were to proceed to trial in this case, the

7  evidence offered by the government would include:  Testimony by

8  law enforcement officials and percipient witnesses, extensive

9  email Bloomberg message and text message records, notes and

10  recordings of telephone calls, and corporate bank and other

11  financial and trading records.

12          THE COURT:  And it is the government's position that

13  that body of evidence would be sufficient to establish guilt

14  beyond a reasonable doubt?

15          MR. PODOLSKY:  Very much, your Honor, yes.

16          THE COURT:  Thank you.

17          Mr. Tomita, would you please stand again.

18          How do you now plead to the charge in Count One of the

19  information, guilty or not guilty?

20          THE DEFENDANT:  Guilty, your Honor.

21          THE COURT:  How do you plead to the charge in

22  Count Two of the information?

23          THE DEFENDANT:  Guilty, your Honor.

24          THE COURT:  How do you plead to the charge in

25  Count Three of the information?

XM4MKTOMS

1          THE DEFENDANT:  Guilty, your Honor.

2          THE COURT:  How do you plead to the charge in

3   Count Four of the information?

4          THE DEFENDANT:  Guilty, your Honor.

5          THE COURT:  And how do you plead to the charge in

6   Count Five of the information?

7          THE DEFENDANT:  Guilty, your Honor.

8          THE COURT:  Are you pleading guilty to each of these

9   charges because you are, in fact, guilty of the crimes charged?

10         THE DEFENDANT:  That is correct, your Honor.

11         THE COURT:  Are you pleading guilty voluntarily and of

12   your own free will?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Would you please look at the Advice of

15   Rights Form, which has been labeled Court Exhibit 1.

16         Have you signed this form?

17         THE DEFENDANT:  I have, your Honor.

18         THE COURT:  Did you read it before you signed it?

19         THE DEFENDANT:  I did, your Honor.

20         THE COURT:  Did you discuss it with your attorneys

21   before you signed it?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And did you understand it before you

24   signed it?

25         THE DEFENDANT:  Yes, your Honor.

XM4MKTOMS

1          THE COURT:  Ms. Cantwell, did you also review and sign

2     Court Exhibit 1?

3          MS. CANTWELL:  I did, your Honor.

4          THE COURT:  Ms. Cantwell, are there any other

5     questions that you believe I should ask Mr. Tomita in

6     connection with this plea?

7          MS. CANTWELL:  No, your Honor.

8          THE COURT:  Mr. Podolsky, are there any other

9     questions that you believe I should ask in connection with the

10    plea?

11         MR. PODOLSKY:  No, your Honor.

12         THE COURT:  Mr. Tomita, you have acknowledged that you

13    are guilty as charged in the superseding information.  I find

14    that you know your rights and that you are waiving them

15    voluntarily.  Because your plea is entered knowingly and

16    voluntarily, and is supported by an independent basis in fact

17    containing each of the essential elements of each offense, I

18    accept your guilty plea, and I adjudge you guilty of the

19    offenses charged in Counts One, Two, Three, Four, and Five of

20    the superseding information captioned United States of America

21    v. William Tomita, to which you have pleaded guilty.

22         Ms. Cantwell, do you wish to be present for any

23    interview of Mr. Tomita in connection with the presentence

24    report?

25         MS. CANTWELL:  I do, your Honor.

XM4MKTOMS

1          THE COURT:  Thank you.  You can be all be seated.

2          So, counsel, what is your desire with respect to

3    setting a sentencing date or a control date?

4          MR. PODOLSKY:  Your Honor, in the circumstances of

5    this case, I think additional time would afford an opportunity

6    for the Court to receive information that would be important to

7    Mr. Tomita's sentencing.  For that reason, we would request a

8    control date within six months, at which time we will update

9    the Court as to whether a presentence investigation report

10   should be prepared, whether additional time is necessary.  Of

11   course, in the interim, if it becomes clear that we can proceed

12   to sentence sooner, we'll update the Court and request

13   preparation of the report at a sooner time.

14         THE COURT:  Thank you.

15         Ms. Ng, may we have a control date about six months

16   out from here?

17         THE DEPUTY CLERK:  Friday, October 28, 2022, at

18   11:00 a.m.

19         THE COURT:  Counsel, are you all available on

20   October 28, 2022, at 11:00 in the morning, for a control date?

21         MR. PODOLSKY:  We are, your Honor.

22         MS. CANTWELL:  Sure thing, your Honor.  Thank you.

23         THE COURT:  Thank you.

24         October 28, 2022, at 11:00 a.m., is set as the control

25   date for sentencing.

XM4MKTOMS

1          Counsel, when it does come time to have the
2     presentence report prepared, I would ask that you give your
3     comments and any objections back promptly to the probation
4     office when the initial disclosure is made, and I ask that you
5     make your submissions in accordance with my sentencing
6     submission procedures, which are part of my individual
7     practices on the Court's website.
8          Mr. Tomita, at some point, the probation office will
9     be preparing a presentence report to assist me in sentencing
10    you.  You will be interviewed by the probation office.  It is
11    important that the information that you give to the probation
12    officer be truthful and accurate.  The report is important in
13    my decision as to what your sentence will be.  You and your
14    attorney have a right and will have an opportunity to examine
15    the report, to challenge or comment on it, and to speak on your
16    behalf before sentencing.  Failing to be truthful with the
17    probation officer and the Court may have an adverse effect on
18    your sentence and may subject you to prosecution.
19          Do you understand that?
20          THE DEFENDANT:  I understand that, your Honor.
21          THE COURT:  Thank you.
22          Is there a proposed bail package?
23          MR. PODOLSKY:  There is, your Honor.
24          We've discussed with defense counsel and would jointly
25    propose that Mr. Tomita be released today upon his signature of

XM4MKTOMS

1  a $500,000 personal recognizance bond, to be signed within

2  three weeks by one financially responsible person or one

3  additional financially responsible person.

4        THE COURT:  One person in addition to Mr. Tomita?

5        MR. PODOLSKY:  Exactly, your Honor.

6        THE COURT:  Okay.

7        MR. PODOLSKY:  His travel to be restricted to the

8  Continental United States, and he will surrender today both his

9  United States and Japanese passports and any other travel

10 documents.

11       And I will say that in light of the agreement between

12 Mr. Tomita and the government and the fact that he has his

13 passports to be surrendered here with him, we do believe that

14 these conditions would reasonably assure his appearance in

15 court, as well as the protection of the community.

16       THE COURT:  Thank you.

17       Would it be regular supervision?

18       MR. PODOLSKY:  Yes, your Honor.

19       THE COURT:  Officer Ovalles, are there any other

20 conditions that you think need to be specified in the

21 disposition sheet?

22       MR. OVALLES:  Your Honor, the only condition that I

23 would ask that your Honor note, as opposed to regular pretrial

24 supervision, it would be pretrial supervision as directed.

25 Besides that, nothing else, your Honor.

XM4MKTOMS

```
1                THE COURT:  Very good.
2                I will now prepare the disposition form.
3                This is a voluntary surrender, correct?
4                MS. CANTWELL:  Yes, your Honor.
5                THE COURT:  Today?
6                MS. CANTWELL:  Yes, your Honor.
7                THE COURT:  Shall I say defendant to be released on
8      own signature plus surrender of passports?
9                MR. PODOLSKY:  Yes, your Honor.
10               THE COURT:  What I have written on this form is:
11               Date of arrest:  4/22/22, voluntary surrender.
12               Agreed conditions of release:  $500,000 PRB1FRP;
13     travel restricted to Continental United States; surrender
14     travel documents and no new applications; pretrial supervision
15     as directed by pretrial services.
16               Defendant to be released on own signature plus the
17     following conditions:  Surrender of passports; remaining
18     conditions to be met by 21 days.
19               Is there anything else you would expect me to write on
20     this form?
21               MR. PODOLSKY:  No, your Honor.  Thank you.
22               THE COURT:  Officer Ovalles, anything else?
23               MR. OVALLES:  Nothing further, your Honor.  Thank you.
24               THE COURT:  Very good.
25               Let me print out copies to sign them.
```

XM4MKTOMS

1          I find that these conditions are appropriate and

2     sufficient based on the representations that have been made

3     here to assure against risk of flight and any danger to the

4     public.

5          (Pause)

6          THE COURT:  I've provided the five copies to Ms. Ng.

7          Mr. Tomita, do you understand the conditions that I

8     have imposed for your release pending sentencing?

9          THE DEFENDANT:  I do, your Honor.  Thank you.

10         THE COURT:  And do you understand that the violation

11    of any conditions can have severe consequences?

12         THE DEFENDANT:  I certainly do, your Honor.

13         THE COURT:  Thank you.

14         Do you also understand that if you don't appear in

15    court on the date that is finally set for your actual

16    sentencing, you will be guilty of a criminal act for which you

17    could be sentenced to imprisonment separate and apart from, and

18    in addition to, any other sentence that you might receive for

19    the crimes to which you have just pleaded guilty?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Then I will expect to see you on the

22    appropriate date.

23         And I also encourage you to get yourself vaccinated

24    and get the boosters that are available to you to protect

25    yourself and your family.

XM4MKTOMS

1    THE DEFENDANT:  Thank you, your Honor.  I'll keep up
2    with my vaccinations, as I have been.
3    THE COURT:  Thank you.  Glad to hear it.
4    I didn't just single you out for that.  I encourage
5    everybody.
6    Is there anything else that we need to take up
7    together this afternoon?
8    MR. PODOLSKY:  No, your Honor.  Thank you.
9    MS. CANTWELL:  No, your Honor.  Thank you very much.
10   THE COURT:  Thank you.
11   Thank you, all.  Stay safe and be well.  We're
12   adjourned.

                              *  *  *