# Exhibit B

# AMENDMENT AGREEMENT
# TO THE PORTFOLIO SWAPS (STANDARD TERMS) ANNEX

Dated as of January 15, 2015

Credit Suisse Securities (Europe) Limited
(formerly, Credit Suisse First Boston (Europe) Limited, "**CS**")

and

Archegos Fund, LP
(formerly, Tiger Asia Fund, L.P., "**Counterparty**")

**CS** and **Counterparty** have entered into a 1992 ISDA Master Agreement dated as of February 4, 2005, as amended, supplemented or otherwise modified from time to time (the "**Master Agreement**"), which Master Agreement includes, without limitation, the Schedule, the Credit Support Annex, the Portfolio Swaps (Standard Terms) Annex (the "**PSA**") and all Confirmations exchanged between the parties confirming Transactions thereunder.

Capitalized terms used but not defined in this amendment agreement (the "**Amendment Agreement**") have the meanings assigned to them in the Master Agreement (including the PSA).

Accordingly, in consideration of the mutual agreements contained in this Amendment Agreement, the parties agree as follows:

1. **Amendments**

    (A) The PSA is amended by adding the following Section 12.7:

    "12.7   Counterparty represents to CS that:

    (i) it is entering into this PSA and any Transaction in good faith and not with the intent or as a part of a plan to evade compliance with federal securities laws including, without limitation, Section 13(d) of and Rule 10b-5 promulgated under the Exchange Act.

    (ii) it is not entering into any Transaction with the purpose of changing or influencing control of the Issuer of the Shares underlying such Transaction and if Counterparty does seek to change or influence control of the Issuer during the term of the Transaction, it will immediately notify CS.

    (iii) on the date that the parties enter into any Transaction, it is not in possession of any material non-public information regarding the Issuer of the Shares underlying such Transaction. Counterparty covenants that it will not seek to terminate, amend or otherwise modify such Transaction if Counterparty is in possession of any material non-public information regarding the Issuer.

    (iv) on the date that the parties enter into any Transaction, it is not an "affiliate" of the Issuer of the Shares within the meaning of any securities law applicable to such Issuer in respect of the Shares. Counterparty covenants that if it attains such status during the term of such Transaction, it will immediately notify CS.

    (v) on the date that the parties enter into any Transaction, it is not subject to the reporting requirements of Sections 13 or 16 of the Exchange Act with respect to the Shares underlying such Transaction and it

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014963
SDNY_P001_0000043403

        covenants that it will not become subject to such reporting requirements with respect to Shares during the term of such Transaction.

(vi)    on the date that the parties enter into any Transaction, the aggregate amount of all such Shares beneficially owned by it for purposes of Section 13(d) of the Exchange Act, when combined with the notional amount of Shares underlying any long derivative position, is less than 5% of the outstanding Shares.

(vii)    Each Securities Swap entered into pursuant to the PSA and executed through the advanced execution services platform of CS or its affiliate (each, an "**AES Swap**") is permissible under and complies with all laws or regulations applicable to Counterparty.

(viii)    Counterparty understands and agrees that with respect to AES Swaps that the following criteria (collectively, the "**Criteria**") will apply: (i) the aggregate AES Swaps on any trading day with respect to any underlying Securities will be the lesser of (a) one per cent (1%) of the outstanding of such Securities, (b) five per cent (5%) of the average daily trading volume of such Securities and (c) 5% of the projected average daily trading volume for such trading day, in each case, as determined by CS, and (ii) the underlying Securities in respect of each AES Swap will (x) be listed on the New York Stock Exchange or the NASDAQ National Stock Market, (y) be a Regulation NMS stock and (z) have an average daily trading volume of at least 10,000 shares, as determined by CS. Counterparty understands that CS has the right to change the Criteria and will notify (which notice may be oral, electronic or otherwise) Counterparty of any changes in the Criteria."

(B) Section 12.8 is added to the PSA as follows:

"12.8    The parties to each Transaction agree that the amendments set out in the Attachment to the ISDA 2010 Short Form HIRE Act Protocol published by ISDA on November 30, 2010 and available on the ISDA website (www.isda.org) shall apply to such Transaction. The parties further agree that the Implementation Date shall be the effective date of such Transaction as amended by the parties for the purposes of such Protocol amendments regardless of the definitions of such terms in the Protocol."

## 2. Representations

Each party represents to the other party that all representations contained in the Master Agreement and the Standard Terms are true and accurate as of the date of this Amendment Agreement and that such representations are deemed to be given or repeated by each party, as the case may be, on the date of this Amendment Agreement.

## 3. Miscellaneous

(a)    **Entire Agreement.** This Amendment Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings (except as otherwise provided herein) with respect thereto.

(b)    **Standard Terms Continuation.** The Standard Terms and the Schedule, as modified herein, shall continue in full force and effect.

(c)    **Counterparts.** This Amendment Agreement may be executed and delivered in counterparts (including by facsimile transmission), each of which will be deemed an original.

(d)    **Headings.** The headings used in this Amendment Agreement are for convenience of reference only and are not to affect the construction of or to be taken into consideration in interpreting this Amendment Agreement.

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014964
SDNY_P001_0000043404

(e) **Governing Law.** This Amendment Agreement and, to the fullest extent permitted by applicable law, all matters arising out of or relating in any way to this Amendment Agreement will be governed by and construed in accordance with the laws of the State of New York.

[Signature page follows.]

Amendment Agreement to the Portfolio Swaps (Standard Terms) Annex

3

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014965
SDNY_P001_0000043405

IN WITNESS WHEREOF the parties have executed this Amendment Agreement on the respective dates specified below with effect from the date specified on the first page of this Amendment Agreement.

Credit Suisse Securities (Europe) Limited
(formerly, Credit Suisse First Boston
(Europe) Limited)

By: _____
Name:
Title: Joanne Foster
Date: Authorized Signatory

By: _____
Name:
Title: Vittorio Scialoja
Date: Authorized Signatory

Archegos Fund, LP
(formerly, Tiger Asia Fund, L.P.)

By: Archegos Capital Management, LP
(formerly, Tiger Asia Management, LLC),
its investment advisor

By: _____
Name: Sung Kook Hwang
Title: Managing Member of the General Partner
Date: 1/22/15

Amendment Agreement to the Portfolio Swaps (Standard Terms) Annex
Signature Page

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014966
SDNY_P001_0000043406