## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

   v.

SUNG KOOK (BILL) HWANG, PATRICK
HALLIGAN, WILLIAM TOMITA, SCOTT
BECKER, AND ARCHEGOS CAPITAL
MANAGEMENT, LP,

        Defendants.

</td><td>

Civil Action No. 22-03402 (JPO)

*Document Electronically Filed*

</td></tr>
</table>

---

## DEFENDANT SUNG KOOK (BILL) HWANG'S
## MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S
## APPLICATION TO INTERVENE AND FOR A STAY OF DISCOVERY

---

Lawrence S. Lustberg
Thomas R. Valen
Jeffrey L. Nagel
Paul A. Saso
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
*Attorneys for Defendant*
*Sung Kook (Bill) Hwang*

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY......................................................... 2

ARGUMENT ................................................................................................................................. 5

      I.     THE MOTION TO STAY IS PREMATURE AND SHOULD BE DENIED ....... 5

      II.    THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST FOR A
            BLANKET STAY OF ALL DISCOVERY BECAUSE SUCH A STAY DOES
            NOT SERVE THE INTERESTS OF THE PARTIES, COURT, OR PUBLIC ..... 7

CONCLUSION............................................................................................................................. 17

3043341.3 111822-107624

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banks v. Yokemick*,
  144 F. Supp. 2d 272 (S.D.N.Y. 2001)..........................................................................................8

*Bernard v. Lombardo*,
  No. 16-CV-863 (RMB), 2017 WL 2984022 (S.D.N.Y. June 9, 2017).....................................8

*Brady v. Maryland*,
  373 U.S. 83 (1963)....................................................................................................................5

*CFTC v. Baldwin, et al.*,
  No. 21 Civ. 5707 (LJL), ECF Doc. 54 (S.D.N.Y. Nov. 15, 2021) ...........................................9

*Chacon v. E. Haven Police Dep't*,
  No. 3:10CV1692 JBA, 2011 WL 3889249 (D. Conn. Sept. 2, 2011) ..............................14, 15

*Citibank, N.A. v. Hakim*,
  No. 92 CIV. 6233 (MBM), 1993 WL 481335 (S.D.N.Y. Nov. 18, 1993)..............................14

*Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*,
  3:13-CV-00509 VLB, 2014 WL 3895923 (D. Conn. Aug. 8, 2014)........................................7

*Digital Equip. Corp. v. Currie Enter.*,
  142 F.R.D. 8 (D. Mass. 1991)......................................................................................6, 16, 17

*First Bank Bus. Capital, Inc. v. Agriprocessors, Inc.*,
  C08-1035, 2009 WL 2584842 (N.D. Iowa Aug. 18, 2009) *aff'd*, 08-CV-1035-
  LRR, 2009 WL 2905540 (N.D. Iowa Sept. 4, 2009) ................................................................6

*Gerrard v. Acara Sols. Inc.*,
  18-CV-1041V(F), 2019 WL 2647758 (W.D.N.Y. June 27, 2019), *report and
  recommendation rejected on other grounds*, 469 F. Supp. 3d 96 (W.D.N.Y.
  2020) ........................................................................................................................................7

*Gran Sabana Corp. N.V. v. Kossoff*,
  No. 21-CV-3154 (RA), 2021 WL 3666116 (S.D.N.Y. Aug. 17, 2021)..................................10

*Landis v. North American Co.*,
  299 U.S 248 (1936).....................................................................................................................7

*Louis Vuitton Malleier S.A. v. LY USA, Inc.*,
  767 F.3d 83 (2d Cir. 2012)...................................................................................................6, 8, 9

ii

*Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*,
    486 F. Supp. 1118 (S.D.N.Y. 1980) ................................................................................17

*SEC v. Adonakis*,
    No. 12 CIV 2012, WL 10817377 (S.D.N.Y. May 21, 2012) .........................................14

*SEC v. Blakstad*,
    No. 19 Civ. 6387 (DLC), ECF Doc. 17 (S.D.N.Y. Sep. 10, 2019) .................................9

*SEC v. Boucher*,
    No. 20-CV-1650-DMS-MSB, 2021 WL 321994 (S.D. Cal. Feb. 1, 2021) ....................17

*S.E.C. v. Cioffi*,
    868 F. Supp. 2d 65 (E.D.N.Y. 2012), *abrogated on other grounds* by *S.E.C. v.*
    *Citigroup Global Markets, Inc.*, 752 F.3d 285 (2d Cir. 2014) ......................................16

*SEC v. Cioffi*,
    08–cv–2457, 2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008) .....................................11, 13

*SEC v. Doody*,
    186 F. Supp. 2d 379 (S.D.N.Y. 2002) ........................................................................7, 14

*SEC v. Dresser Indus., Inc.*,
    628 F.2d 1368 (D.C. Cir. 1980) ......................................................................................8

*SEC v. Durante et al.*,
    No. 15 Civ. 9874 (RJS), ECF Doc. 66 (S.D.N.Y. May 11, 2016) .................................9

*SEC v. Fraser*,
    09-CV-443, 2009 WL 1531854 (D. Ariz. June 1, 2009) .........................................6, 12

*SEC v. Gupta*,
    11 Civ. 7566 (JSR), 2011 WL 5977579 (S.D.N.Y. Nov. 30, 2011) .............................8

*SEC v. Hu*,
    No. 20 Civ. 5496 (DLC), ECF Doc. 12 (S.D.N.Y. Sep. 21, 2020) ................................9

*SEC v. LaGuardia*,
    No. 19 Civ. 5895 (ALC) (SDA), ECF Doc. 25 (S.D.N.Y. Jan. 13, 2020) .....................9

*SEC v. Oakford Corp.*,
    181 F.R.D. 269 (S.D.N.Y. 1998) ...................................................................................12

*SEC v. Pinto-Thomaz*,
    No. 18 Civ. 5757 (JPO), ECF Doc. 21 (S.D.N.Y. Oct. 11, 2018) .................................9

*SEC v. Saad*,
    229 F.R.D. 90 (S.D.N.Y. 2005) ..................................................................................8, 14

iii

*SEC v. Saad*,
    384 F. Supp. 2d 692 (S.D.N.Y. 2005)........................................................................8

*SEC v. Sandifur*,
    No. C05-1631 C, 2006 WL 3692611 (W.D. Wash. Dec. 11, 2006)..................................10, 12

*SEC v. Town of Ramapo N.Y., et al.*,
    No. 16 Civ. 2779 (CS), ECF Doc. 90 (S.D.N.Y. Nov. 4, 2016)......................................9

*SEC v. Wey*,
    No. 15 Civ. 7116 (PKC), ECF Doc. 103 (S.D.N.Y. June 9, 2016) .................................9

*St. Martin v. Jones*,
    No. CIV.A. 08-1047, 2008 WL 4534398 (E.D. La. Oct. 2, 2008) .................................14

*U.S. E.E.O.C. v. Glob. Horizons, Inc.*,
    CV 11-00257 2012 WL 874868 (D. Haw. Mar. 13, 2012)...........................................6

*United States v. All Funds on Deposit*,
    767 F. Supp. 36 (E.D.N.Y. 1991) ........................................................................6

*United States v. Banco Cafetero Int'l*,
    107 F.R.D. 361 (S.D.N.Y. 1985) ......................................................................16

*United States v. Colasuonno*,
    05 CR. 1110, 2006 WL 3025880 (S.D.N.Y. Oct. 24, 2006)........................................10

*United States v. FINRA*,
    607 F. Supp. 2d 391 (E.D.N.Y. 2009) ...............................................................11

*United States v. Kordel*,
    397 U.S. 1 (1970).........................................................................................7

*Weil v. Markowitz*,
    829 F.2d 166 (D.C. Cir. 1987) ..........................................................................8

**Statutes**

18 U.S.C. § 1348...................................................................................................4

15 U.S.C. § 78i(a)(2), Exchange Act, § 9(a)(2).................................................................3

15 U.S.C. § 78j(b), Exchange Act, § 10(b).......................................................................3

15 U.S.C. § 78t(a), Exchange Act, § 20(a) .......................................................................3

15 U.S.C. § 77q(a), Securities Act, § 17(a) .......................................................................3

3043341.3 111822-107624

**Rules**

Federal Rule of Civil Procedure 15 ................................................................2

Federal Rule of Civil Procedure 16 ...........................................................3, 5

Federal Rule of Civil Procedure 26(c) ........................................................13

Federal Rule of Civil Procedure 26(f) ...........................................................7

Federal Rule of Civil Procedure 45 .............................................................15

Federal Rule of Civil Procedure 45(b) ........................................................13

Individual Rules and Practices in Civil Cases of U.S. District Judge J. Paul
Oetken, S.D.N.Y., Rule 2.D .......................................................................9

S.D.N.Y. Local Civil Rule 33.3(a) ..............................................................15

S.D.N.Y. Local Civil Rule 33.3(c) ..............................................................15

**Regulations**

17 C.F.R. § 240.10b-5 ...................................................................................3

**Constitutional Provisions**

U.S. Const. amend. V ...............................................................................1, 10

**Other Authorities**

DOJ Office of Public Affairs Release: "Four Charged in Connection with
Multibillion-Dollar Collapse of Archegos Capital Management" ............2

SEC Press Release No. 2022-70, "SEC Charges Archegos and its Founder with
Massive Market Manipulation Scheme" ...................................................4

US Attorneys' Office for the Southern District of New York, "United States
Attorney Announces Charges in Connection with Collapse of Archegos
Capital Management," April 27, 2022 (*available at*
https://youtu.be/DZIWvpDmhc8 ..............................................................5

v

Defendant Sung Kook (Bill) Hwang respectfully submits this Memorandum of Law in opposition to the Government's Application to Intervene and for a Stay of Discovery, along with the accompanying Declaration of Thomas R. Valen, Esq., sworn to November 15, 2022 (the "Valen Decl."), in support of this Memorandum of Law.

## PRELIMINARY STATEMENT

The Court should defer decision on, if it does not outright deny, the Government's Application to Intervene and for a Stay of Discovery (the "Stay Request").  The Government's request is not only premature, but also inappropriately seeks a blanket stay of discovery, pending the resolution of *United States v. Sung Kook (Bill) Hwang et al.*, 22 Cr. 240 (AH) (the "Criminal Action"), which alleges criminal conduct against two of the defendants here, defendants Hwang and Halligan, and is currently set for trial before the Honorable Alvin K. Hellerstein, United States District Judge, on October 10, 2023.

An order staying discovery in this action is unwarranted, for two reasons.  *First*, no party has yet sought to commence discovery, and all defendants have filed motions to dismiss, with briefing on those motions set to be completed in January 2023. If those very meritorious motions are granted (as, respectfully, they should be), no stay of discovery will be required.  At a minimum, the scope of discovery and the parties to it may well be affected by a ruling on those motions.  And *second*, although a stay of certain types of discovery may be appropriate at a later time—following the appearance of all parties before the Court for a preliminary conference and subsequent entry of a Case Management Order—either on Fifth Amendment grounds, or to serve the interests of the Government, it may be perfectly appropriate to conduct other discovery which does not further those interests, including, for example, document production including between the parties and the SEC, as well as third-parties.  Accordingly, under the applicable case law, discussed below, a blanket stay of discovery is inappropriate and would unnecessarily interfere with the interests of

1

the parties, the Court and the public in moving the case forward in an efficient manner, if necessary, following a decision on the pending motions to dismiss.[1]

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On April 27, 2022, the SEC filed the initial complaint in this action, the same day that the U.S. Attorney's Office for the Southern District of New York unsealed an indictment charging Mr. Hwang and Mr. Halligan with several crimes.  (*See* ECF Doc. No. 1 (initial complaint)); Valen Decl. Ex. 1 (DOJ Office of Public Affairs Release: "Four Charged in Connection with Multibillion-Dollar Collapse of Archegos Capital Management" ("This case was investigated by the U.S. Attorney's Office for the Southern District of New York and the FBI.  The Justice Department's Organized Crime and Gang Section provided valuable assistance.  The U.S. Securities and Exchange Commission and the U.S. Commodity Futures Trading Commission, each of which today filed a parallel civil action, assisted and cooperated in this investigation.")).

The two pleadings allege largely the same facts, and include overlapping legal theories. Defendants Hwang, Halligan and Archegos filed motions to dismiss the SEC's complaint on June 28, 2022; and as allowed by Federal Rule of Civil Procedure 15 and this Court's individual rules, the SEC opted to file an amended complaint on August 26, 2022 (ECF Doc. No. 47), which Mr. Hwang and the other defendants again moved to dismiss on October 25, 2022 (ECF Doc. Nos. 54-61).  Those motions are due to be fully briefed by all defendants by January 23, 2023 (ECF Doc. No. 69 (briefing schedule)).  While those motions are pending, no discovery has been sought by

---

[1]     In addition, Archegos Capital Management LP ("ACM") is a defendant in these proceedings, but not in the Criminal Action.  Accordingly, its interests are not served by a stay, let alone a complete stay of discovery.  That issue is fully briefed in Archegos's separately filed Memorandum of Law in Opposition to the Government's Application to Intervene and for a Stay of Discovery, which Defendant Hwang adopts here as he does the arguments set forth in any opposition filed by counsel on behalf of Mr. Halligan.

either side; nor has the Court scheduled a Rule 16 conference or entered a Case Management Order.

Defendant Hwang's recently filed Memorandum of Law in Support of Dismissal (ECF Doc. No. 58, filed October 25, 2022) explains in detail how the SEC's First Amended Complaint ("FAC"), fails to remedy the fundamental legal deficiencies underlying the claims in this action. In sum, Mr. Hwang has shown how, in paragraph after paragraph, the FAC alleges entirely lawful trading on the open market, but then concludes that the trading at issue—real trades exposing defendant Bill Hwang to real economic risk, and devoid of any deceptive action—was somehow unlawful based on, among other things, the large swap positons taken by Archegos, the price movement in some of Archegos's holdings, and the timing of trades.[2] Mr. Hwang has shown how the SEC's theory constitutes an unprecedented expansion of the notion of "open-market manipulation," already a dubious theory, and should not be legally sustained by this Court for the many reasons set forth in Mr. Hwang's Memorandum supporting dismissal, as well as for the additional reasons set forth in the motions to dismiss by the other defendants.[3]

Apart from such open-market manipulation allegations, the FAC also contains assertions about Archegos employees misleading "many of [its] Counterparties during the Relevant Period in order to obtain increased trading capacity to further its manipulative trading" (FAC ¶ 5). In

---

[2]      Four of the seven claims for relief asserted in the FAC are brought against Mr. Hwang and allege violations of the following securities fraud statutes: (1) Section 17(a) of the Securities Act (FAC ¶¶ 180-82) (Count I), (2) Section 10(b) of the Exchange Act and Rule 10b-5 thereunder (FAC ¶¶ 186-88) (Count III), (3) Section 9(a)(2) of the Exchange Act (FAC ¶¶ 195-97) (Count VI), and (4) Section 20(a) of the Exchange Act (FAC ¶¶ 198-203) (Count VII). The FAC incorporates every allegation about manipulative trading and misrepresentations into each count.

[3]      According to the FAC, although Archegos, a family investment office owned by Mr. Hwang, had been in existence for many years and was worth around $4 billion, in September 2020 it changed its operations and commenced a manipulative trading scheme that allegedly continued through the fund's collapse in March 2021 (the "Relevant Period") (FAC ¶ 3). During this entire seven-month period, the SEC alleges, "**none** of [Archegos's] trading was based on a principled view of the true value of a particular issuer and instead was intended to artificially inflate share prices" of its top 10 positions (FAC ¶ 82 (emphasis added))—that is, the allegation in the FAC is that not a single trade among the thousands that Archegos conducted "on numerous days and sometimes week-after-week, typically at large volumes" during the entire Relevant Period (FAC ¶ 69) was legitimate.

3

particular, Defendants Tomita and Becker, two former employees who themselves have already resolved and settled any claims with the SEC (and any criminal claims by the Department of Justice), allegedly made "false assurances" to a number of anonymized counterparty financial institutions—denominated "CP1" through "CP8"—"concerning [Archegos's] portfolio composition, its concentrated exposure, and its liquidity profile." (FAC ¶ 6). But the SEC never alleges that these alleged misstatements were made directly by Mr. Hwang, and instead it seeks liability against him based on a theory of control liability which, as Mr. Hwang argues, fails as a matter of law.

To be sure, the indictment in the Criminal Action, stems largely from the same underlying conduct as is at issue here. But it also contains some important differences. For example, the indictment alleges conduct "[f]rom in or about 2020, up to and including in or about March 2021" (Indictment ¶¶ 1, 13, attached as Ex. A to the Government's Stay Request), a broader period of time than is set forth in the Relevant Period defined by the SEC, which is September 2020 through March 2021 (FAC ¶¶ 2-3). The indictment also charges a Racketeering Conspiracy in violation of 18 U.S.C. § 1348 (Indictment ¶ 68-73) that does not appear in the FAC; contains a wire fraud count (Indictment ¶¶ 81-82) also absent here; and does not charge corporate defendant Archegos Capital Management LP with any criminal activity at all.

Whatever the differences, there is no question but that this action and the criminal prosecution were coordinated affairs, including joint investigative steps, all culminating in a joint press conference on the day the indictment was unsealed and the complaint filed. *See* Valen Decl. Ex. 2 (SEC Press Release No. 2022-70, "SEC Charges Archegos and its Founder with Massive Market Manipulation Scheme" ("The SEC acknowledges the assistance and cooperation of the U.S. Attorney's Office for the Southern District of New York, the FBI, and the CFTC")); *see also*

3043341.3 111822-107624

US Attorneys' Office for the Southern District of New York, "United States Attorney Announces Charges in Connection with Collapse of Archegos Capital Management," April 27, 2022 (*available at* https://youtu.be/DZIWvpDmhc8, at 9:16) ("I also want to thank our partners at the FBI, the SEC, and the CFTC. Their dedication and hard work on this investigation was invaluable."). The coordinated investigations included, among other investigative techniques, numerous subpoenas and the production by Archegos of more than 4 million pages of overlapping materials to both the SEC and DOJ. Valen Decl. ¶ 31.

Although, as the Government has indicated (ECF Doc. No. 71, Gov't Mem. at 11), DOJ has also already disclosed a great deal of information in the Criminal Action, pursuant to Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), no discovery has been exchanged by the parties in this case. No preliminary conference has been held and none is scheduled; indeed, a Case Management Order has not been sought or entered. Under the circumstances, the Government's Stay Request, seeking a blanket stay of all discovery in this case for more than a year while the Criminal Action proceeds is, at best, premature and indeed is not in the interest of the parties, the Court, or the public, and should accordingly be denied.[4]

## ARGUMENT

## I.    THE MOTION TO STAY IS PREMATURE AND SHOULD BE DENIED

The Government has failed to demonstrate why a complete stay of discovery is warranted, let alone at this time. Specifically, the Government seeks to intervene now, in a case in which no preliminary conference has been held, no Case Management Order has been entered, no discovery

---

[4]    The Government's Stay Request seeks an order granting it two things: to intervene in this action and to stay all discovery. As the only purpose for intervention set forth in its motion papers is to request the stay of discovery, and as such a stay is unwarranted for the reasons set forth herein, the Court should deny the Government's motion in its entirety to intervene as well.

requests have been served, and no discovery has been produced by any of the parties since the onset of the litigation.

Of course, "[t]he person seeking a stay bears the burden of establishing its need."  *Louis Vuitton Malleier S.A. v. LY USA, Inc.*, 767 F.3d 83, 97 (2d Cir. 2012).   Accordingly, the Government must establish the factual basis for its request.  Thus, "mere conclusory allegations of potential abuse or simply the opportunity by the claimant to improperly exploit civil discovery ... will not avail on a motion for a stay."  *SEC v. Fraser*,  09-CV-443, 2009 WL 1531854, at *2 (D. Ariz. June 1, 2009) (citing *United States v. All Funds on Deposit*, 767 F. Supp. 36, 42 (E.D.N.Y. 1991); *Digital Equip. Corp. v. Currie Enter.*, 142 F.R.D. 8, 14 (D. Mass. 1991); *First Bank Bus. Capital, Inc. v. Agriprocessors, Inc.*, C08-1035, 2009 WL 2584842, at *7 (N.D. Iowa Aug. 18, 2009) ("Conclusory allegations that a criminal case might be harmed simply because civil discovery rules are more broad than criminal discovery rules are not sufficient to establish the 'substantial prejudice' necessary to warrant granting a stay.") *aff'd*, 08-CV-1035-LRR, 2009 WL 2905540 (N.D. Iowa Sept. 4, 2009); *U.S. E.E.O.C. v. Glob. Horizons, Inc.*, CV 11-00257 DAE-RLP, 2012 WL 874868, at *5 (D. Haw. Mar. 13, 2012) ("while the Government may experience some hardship if the civil and criminal actions proceed simultaneously, this generalized and speculative concern does not, in and of itself, outweigh the very real hardship that will be visited upon the Moving Defendants if discovery is completely stayed in the civil case for the next several months.").

Here, the Government has provided no basis for the Stay Request other than speculative and conclusory assertions that discovery "would allow the defendants to circumvent the criminal discovery rules and improperly tailor their defenses in the Criminal Case…" (ECF Doc. No. 71, Gov't Mem. at 1).  But there are no actual discovery requests that have been served that permit

DOJ to articulate how or why the SEC's or a third-party's compliance with them might actually constitute such a circumvention.  Indeed, it is impossible for the Court to evaluate DOJ's claims that they would do so—or for Mr. Hwang to respond to them—when there are no pending requests against which to measure the Government's bare assertions that they engender a circumvention of the criminal rules and prejudice the prosecution.  *See SEC v. Doody*, 186 F. Supp. 2d 379, 382 (S.D.N.Y. 2002) (rejecting Government motion for complete stay of discovery pending trial of a parallel criminal case for insider trading where court was "left guessing as to just what protection the government legitimately requires."); *Country Club of Fairfield, Inc. v. New Hampshire Ins. Co.*, 3:13-CV-00509 VLB, 2014 WL 3895923, at *7 (D. Conn. Aug. 8, 2014) (denying defendant's motion to stay discovery, noting that "the Defendant has not articulated what discovery requests it has yet received such that this Court could determine whether the breadth of discovery sought weighs in favor of Defendant's request to stay."); *see generally Gerrard v. Acara Sols. Inc.*, 18-CV-1041V(F), 2019 WL 2647758, at *14 (W.D.N.Y. June 27, 2019), *report and recommendation rejected on other grounds*, 469 F. Supp. 3d 96 (W.D.N.Y. 2020) (denying defendant's motion for a protective order and stay of discovery as premature, finding that discovery could not commence prior to a Rule 26(f) conference, which had yet to occur).  In short, this Court should, at most, deny the Stay Request without prejudice to the Government reasserting it, should the Government still have any articulable concerns if and when actual discovery issues arise in the case.

## II.     THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST FOR A BLANKET STAY OF ALL DISCOVERY BECAUSE SUCH A STAY DOES NOT SERVE THE INTERESTS OF THE PARTIES, COURT, OR PUBLIC

Federal courts have the inherent authority to stay "civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seem[] to require such action." *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970); *see also Landis v. North American Co.*, 299 U.S 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent

7

in every court to control the disposition of the causes on its docket"). However, a "total stay of civil discovery pending the outcome of related criminal matters is an extraordinary remedy appropriate for extraordinary circumstances." *Weil v. Markowitz*, 829 F.2d 166, 175 n.17 (D.C. Cir. 1987). *See also Bernard v. Lombardo,* No. 16-CV-863 (RMB), 2017 WL 2984022, at *2 (S.D.N.Y. June 9, 2017) (noting that a stay of a civil case to permit conclusion of a pending criminal case constitutes "extraordinary" relief). Indeed, absent "substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence." *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1374 (D.C. Cir. 1980).

In considering whether to grant that "extraordinary remedy" of a stay, the Court's "starting point" should be "that discovery and other proceedings in a civil action brought by the Securities and Exchange Commission ought to proceed in the normal course, notwithstanding the happenstance that some of the discovery also relates to a parallel criminal matter." *SEC v. Saad*, 384 F. Supp. 2d 692, 693 (S.D.N.Y. 2005); *see also SEC v. Gupta*, 11 Civ. 7566 (JSR), 2011 WL 5977579, at *1 (S.D.N.Y. Nov. 30, 2011). As courts have recognized, defendants in parallel enforcement actions "are not just facing a criminal indictment; they are also facing a very serious SEC civil action, and they are thus fully entitled to the timely discovery that federal law grants them in defending such an action." *SEC v. Saad*, 229 F.R.D. 90, 92 (S.D.N.Y. 2005). As a result, the Court must closely examine "the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton Malletier S.A.*, 676 F.3d at 99. Ultimately, a stay should only be imposed where "[t]he district court's … particularized inquiry into the circumstances of, and the competing interests in, the case" so warrant. *Id.* at 99-100 (quoting *Banks v. Yokemick*, 144 F. Supp. 2d 272, 275 (S.D.N.Y. 2001)).

3043341.3 111822-107624

Thus, the Government's insistence notwithstanding, there is nothing "routine" about entering such a blanket stay of discovery.[5]

In evaluating motions to stay civil discovery pending the conclusion of a parallel criminal proceeding, courts are required, in this Circuit, to use a six-factor balancing test, which includes consideration of the following:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Louis Vuitton Malleier S.A.*, 676 F.3d at 99.  An examination of these factors in their totality, and under the circumstances of this case, demonstrate that the Stay Request should be denied.

*First,* with respect to factors one and two, Mr. Hwang agrees with the Government that issues raised in the criminal case "overlap" with issues in this action and, of course, that the individual defendants have been indicted.   But that alone is insufficient to warrant the extraordinary relief requested here, and as set forth below, the other factors strongly favor the denial of any blanket stay of discovery under these circumstances.   Indeed, the presence of

---

[5]     The DOJ argues in its brief that "courts in this Circuit and others have *routinely* entered a stay of parallel civil actions, *even over a defendant's objection*" and cites thirteen cases to support this proposition (ECF Doc. No. 71, Gov't Mem. at 8-9) (emphasis added).  But in six of those thirteen cases, some or all of the defendants actually *consented to or did not object to* the motion to stay.  *See CFTC v. Baldwin, et al.*, No. 21 Civ. 5707 (LJL), ECF Doc. 54 (S.D.N.Y. Nov. 15, 2021); *SEC v. Hu*, No. 20 Civ. 5496 (DLC), ECF Doc. 12 (S.D.N.Y. Sep. 21, 2020); *SEC v. Blakstad*, No. 19 Civ. 6387 (DLC), ECF Doc. 17 (S.D.N.Y. Sep. 10, 2019); *SEC v. Pinto-Thomaz*, No. 18 Civ. 5757 (JPO), ECF Doc. 21 (S.D.N.Y. Oct. 11, 2018); *SEC v. Wey*, No. 15 Civ. 7116 (PKC), ECF Doc. 103 (S.D.N.Y. June 9, 2016); *SEC v. Durante et al.*, No. 15 Civ. 9874 (RJS), ECF Doc. 66 (S.D.N.Y. May 11, 2016).  In another, the defendants had already "received from the SEC all the documents that the SEC obtained from third parties during the course of its parallel proceedings, as well as all the SEC's investigative testimony transcripts…" *SEC v. LaGuardia*, No. 19 Civ. 5895 (ALC) (SDA), ECF Doc. 25 (S.D.N.Y. Jan. 13, 2020).  And in yet one more, the Court granted only a partial stay of discovery.  *SEC v. Town of Ramapo N.Y., et al.*, No. 16 Civ. 2779 (CS), ECF Doc. 90 at 42 (S.D.N.Y. Nov. 4, 2016).  Although the Government has failed to comply with Rule 2.D of this Court's Individual Rules and Practices by not providing copies of these unreported cases, we do so here for the Court's convenience.  *See* Valen Decl. Exs. 10-19.

9

"overlap" and an indictment do not, without more, mean that a stay is required, even though the Fifth Amendment rights of a defendant may be implicated if certain discovery proceeds. *Gran Sabana Corp. N.V. v. Kossoff*, No. 21-CV-3154 (RA), 2021 WL 3666116, at *2 (S.D.N.Y. Aug. 17, 2021) ("A district court may stay a civil action during the pendency of related criminal proceedings, but the Constitution rarely, if ever, *requires* such a stay.") (cleaned up) (emphasis in original).  Although the Fifth Amendment rationale for a stay is more compelling following an indictment, that is not a consideration favoring a stay here, where neither indicted defendant is currently seeking a stay to protect his Fifth Amendment privileges—a right that belongs to them and is not for the Government to assert. *See United States v. Colasuonno*, 05 CR. 1110 (AKH), 2006 WL 3025880, at *3 (S.D.N.Y. Oct. 24, 2006) ("The government has no Fifth Amendment right to waive, and cannot assert a defendant's right on his behalf when the result is convenient to its position.").  Moreover, as discussed *infra*, other types of discovery could proceed in this case without implicating any such Fifth Amendment concerns.

*Second,* factors three and four—which weigh the private interests of the parties in proceeding expeditiously against the resulting prejudice of delay and the burdens associated with discovery—strongly militate against granting the Stay Request in this case.  In particular, when evaluating those interests, the level of coordination between the pertinent government agencies is a significant consideration.  That is, "[a]lthough courts have been receptive to Government stay requests in civil cases brought by parties other than the Government, results in recent years have been markedly different when the Government itself brings a civil lawsuit simultaneous with a criminal proceeding." *SEC v. Sandifur*, No. C05-1631 C, 2006 WL 3692611, at *2 (W.D. Wash. Dec. 11, 2006).  Thus, "[c]ourts regularly deny stays when civil regulators have worked directly

in concert with the criminal prosecutors during the investigation and the Government has used parallel proceedings to its advantage." *Id.* As discussed above, that is the case here.

Indeed, the concern often raised by the Government in such situations—that the defendant may use depositions or other forms of discovery to obtain more information than would otherwise be allowed prior to a criminal trial—is unavailing where the Government itself has created that very circumstance, and where the defendant has a strong interest in resolving the pending civil action as well as the criminal one in an expeditious manner:

> Had the Government thought [proceeding with civil discovery] was a serious problem, it could have easily avoided it by waiting until after the criminal matter was resolved to institute civil proceedings. Instead, the United States worked directly with the SEC and voluntarily chose to institute both civil and criminal actions at the same time. As a result, the Defendants are now facing very serious civil charges, and they have a strong interest in a timely resolution.

*Id.* (denying motion to stay despite Government's argument that defendant would have access to depositions in civil action). In short, "[c]ourts are justifiably skeptical of blanket claims of prejudice by the government where—as here—the government is responsible for the simultaneous proceedings in the first place." *SEC v. Cioffi*, 08–cv–2457, 2008 WL 4693320, at *1 (E.D.N.Y. Oct. 23, 2008).

Moreover, the prejudice cited by the Government, in addition to being of its own making, is also not one that has led courts to "routinely" grant stays, despite the Government's claim of entitlement to this "tactical advantage." *See, e.g., United States v. FINRA*, 607 F. Supp. 2d 391, 394 (E.D.N.Y. 2009) ("In sum, the only 'prejudice' the Court can discern is that allowing the arbitration to go forward will result in the criminal defendants having more information than they would otherwise be entitled to at this stage under the Federal Rules of Criminal Procedure. This loss of the government's usual tactical advantage is insufficient to justify enjoining the

11

arbitration."); *SEC v. Oakford Corp.*, 181 F.R.D. 269, 272-73 (S.D.N.Y. 1998) ("to the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges that another government agency has chosen to file against them they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government in providing such discovery beyond its desire to maintain a tactical advantage").

In fact, in weighing the interests of the parties pursuant to the third and fourth factors of the applicable test, the serious nature of the SEC's claims against Mr. Hwang and the other defendants, rather than justifying a stay, instead warrant expeditious resolution.  That is, when "[t]he civil case, like the criminal case, asserts serious violations of the securities laws, [the] Defendants have a strong interest in being able to defend themselves against the SEC's allegations as quickly as possible."  *Fraser*, 2009 WL 1531854, at *3 (denying motion to stay the civil case on the basis that a stay would "substantially prejudice Defendants' interest in the speedy resolution of the SEC's claims against them."); *see also Sandifur*, 2006 WL 3692611, at *3 (denying the government's motion for a temporary stay of discovery, recognizing that "the Defendants are now facing very serious civil charges, and they have a strong interest in a timely resolution.").  Particularly under the circumstances here,  in which DOJ and the SEC coordinated their investigations and chose, with great fanfare, to bring criminal and civil charges simultaneously, the Government's concern about prejudicial "asymmetrical" discovery or "unfair surprise" at trial rings particularly hollow (ECF Doc. No. 71, Gov't Mem. at 13, 15).  Any "prejudice" that DOJ claims was created by its own close coordination with the SEC is outweighed by the defendants' interest in having the case resolved without undue delay.

3043341.3 111822-107624

Indeed, it is not even clear that DOJ's concern is shared by the SEC.  DOJ reports that the "SEC takes no positon on the request for a stay" (ECF Doc. No. 71, Gov't Mem. at 1), suggesting that such silence favors a stay.  But that position seems particularly inconsistent with the SEC's prior public statements, in which it has boasted about its own speed and efficiency in filing the Complaint.  Thus, in its April 27, 2022 press release, SEC Chair Gary Gensler "thank[ed] the SEC staff for taking *swift action* to hold these actors responsible for their alleged misconduct …." Valen Decl. Ex. 2 (emphasis added).  Accordingly, far from DOJ's strange suggestion that the SEC's failure to join (or at least consent to) the Stay Request should be interpreted as tacit support (ECF Doc. No. 71, Gov't Mem. at 12 n.4), the SEC's statements at the outset of this litigation would seem to indicate that delay is not in the SEC's interest either, any more than it is in the interest of the Defendants who seek similarly "swift" vindication regarding the baseless allegations that they have violated the law.

*Third*, factors 5 and 6—the interest of the Court in efficiently moving the case along, rather than staying *all* discovery for at least a year, and the public interest in having this matter resolved— also weigh in favor of denying the Stay Request especially where, as here, discovery can be tailored in such a way that would keep the case moving forward.  That is, rather than issuing a blanket stay, the "far more sensible approach is to allow discovery to go forward, but to allow the U.S. Attorney to object to particular requests."  *Cioffi*, 2008 WL 4693320, at *1.

As Judge Hellerstein, the United States District Judge before whom the parallel Criminal Action is pending, has written, there are many "alternatives short of a complete stay includ[ing]: Tailored Stays; Protective orders under Federal Rule of Civil Procedure 26(c); Motions under Federal Rule of Civil Procedure 45(b) to quash or modify subpoenas … and limiting the scope of examination; [and] Sealing confidential material."  Alvin Hellerstein & Gary Naftalis, Private

13

Civil Actions and Concurrent or Subsequent Regulatory or Criminal Proceedings, SG046 ALI—ABA 903, 957 (2001).  In his seminal article on the subject, the late Judge Milton Pollack agreed, writing:

> [A] general stay of all civil discovery is not by any means the best option available to the court or to the litigants.  Stays can and should be tailored to avoid undue prejudice.  By limiting both the time and subject matter covered in temporary deferrals of particular discovery, a Court can allow civil proceedings to progress as much as possible without prejudicing the relative interests of the litigants.

Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (Transferee Judges' Conference, Oct. 17-19 1989); *see also Citibank, N.A. v. Hakim*, No. 92 CIV. 6233 (MBM), 1993 WL 481335, at *3 (S.D.N.Y. Nov. 18, 1993) (acknowledged that "there are measures less extreme than a stay" that make sense in parallel proceedings, such as "seal[ing] and limit[ing] the use of depositions and interrogatory answers, and otherwise limit[ing] disclosures to counsel."); *Chacon v. E. Haven Police Dep't*, No. 3:10CV1692 JBA, 2011 WL 3889249, at *1 (D. Conn. Sept. 2, 2011)  (permitting written discovery to proceed so that civil action "not be stopped 'in its tracks'"); *St. Martin v. Jones*, No. CIV.A. 08-1047, 2008 WL 4534398, at *3 (E.D. La. Oct. 2, 2008) (granting indicted defendant's motion to stay discovery as to him, but permitting all other discovery against unindicted defendants to proceed); *Saad*, 229 F.R.D. at 92 (permitting "full document discovery, as well as depositions of the non-parties" to proceed); *SEC v. Adonakis*, No. 12 CIV 409 (HB), 2012 WL 10817377, at *1 (S.D.N.Y. May 21, 2012) (permitting document discovery "in full force and effect" and allowing deposition discovery of witnesses to whom the Government had no objection); *Doody*, 186 F. Supp. 2d at 382 (granting limited stay as to certain specific categories of discovery but allowing other categories to proceed).

In sum, if a stay of discovery is warranted at all, and at some point when the issue has ripened, it should be a partial stay, tailored to the type, scope, and timing of discovery, and done

14

in a way that, in fact, serves the interests of the parties, of judicial economy and of the public.

Indeed, this is a particularly salient principle here: DOJ's expressed concern is that defendants will

"be able to obtain statements from relevant witnesses through depositions and use other discovery

mechanisms such as requests for admission and interrogatories to obtain information from the

SEC…" (ECF Doc. No. 71, Gov't Mem. at 15).   Leaving aside that none of these discovery

mechanisms—or any others—have yet been invoked, rendering this concern entirely speculative,[6]

DOJ never articulates the basis for any objection to the parties proceeding with document requests

and productions, including from third-parties, through Rule 45 subpoenas.  Clearly at least that

type of discovery "is a more limited, controlled form of discovery and not subject to the same

concerns as individual oral depositions."  *Chacon*, 2011 WL 3889249, at *1.

    And permitting document discovery to proceed eviscerates any claim that discovery will

be "asymmetrical" (ECF. Doc. No. 71, Gov't Mem. at 15) because the SEC and defendants will

be equally permitted to request documents from one another and seek production from third-

parties.   Indeed, any argument seeking to forestall discovery on the basis that it would be

asymmetrical is puzzling at the very least and seems entirely disingenuous given that during the

investigation of this matter, Archegos produced more than 4 million pages of material to the SEC

all at a time when the Defendants had no right to obtain any discovery.  Valen Decl. ¶ 31.  Even

now, it is impossible for Mr. Hwang to know the volume of material that third-parties, including

---

[6]     Particularly, with respect to DOJ's concerns about interrogatories and requests for admission, the
Government ignores that S.D.N.Y. Local Rule 33.3(a) already significantly reduces the scope of permissible
interrogatories "at the commencement of discovery."  *Id*. (limiting initial interrogatories to requesting the names of
witnesses, the computation of damages, and the existence and location of documents).  And Local Rule 33.3(c) does
not permit the parties to seek, via interrogatory, "the claims and contentions of the opposing party" until the conclusion
of other discovery and at least 30 days prior to the discovery cut-off date, thereby eliminating the potential that Mr.
Hwang might use interrogatories to obtain the Government's legal position through a discovery devise not otherwise
available to him in the Criminal Action.  That Criminal Action is set for trial before Judge Hellerstein on October 10,
2023, a date, it should be noted, to which the Government did not object, rendering unfair its complaint (ECF Doc.
No. 71, Gov't Mem. at 2) about the defendants seeking to delay trial in this massive matter so that they could properly
prepare.

the banks that are the purported victims of the violations at issue, have also already produced to the SEC.  To be sure, some of this material may have been produced in discovery in the criminal matter, but it is hard to understand how either the SEC or DOJ would be prejudiced if discoverable information that was not produced in the criminal case (thus avoiding duplication and reducing the burden on the SEC) were produced to the defendants here.  *See, e.g.*, *United States v. Banco Cafetero Int'l*, 107 F.R.D. 361, 366 (S.D.N.Y. 1985) (denying stay despite government's claim that disclosure of documents relied on in commencing criminal case and provided to the government in connection with the criminal case would hamper its prosecution).  Nor does the Government explain how it would be prejudiced if Mr. Hwang were permitted to conduct third-party discovery.

DOJ boldly predicts that the outcome of the Criminal Action "will likely affect the conduct, scope, and result" of this action (ECF Doc. No. 71, Gov't Mem. at 12-13).  Of course, that is only true if the Government prevails in the Criminal Action; if the defense emerges victorious, experience shows that the SEC will nonetheless proceed given the lower standard of proof in civil cases.  *See S.E.C. v. Cioffi*, 868 F. Supp. 2d 65, 74 (E.D.N.Y. 2012) (acknowledging that acquittals in the criminal case did not "completely foreclose the possibility that the SEC could satisfy the lesser burden of proof applicable to a [later pursued] civil enforcement action"), *abrogated on other grounds* by *S.E.C. v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014).  But in any event, "[a]lthough resolution of the criminal proceedings may possibly obviate contentions in this proceeding," this Court should not "rely upon fortuitous events to manage its docket." *Digital Equip. Corp.*, 142 F.R.D. at 14.  Indeed, DOJ's argument would apply to every circumstance in which there is parallel criminal and civil litigation but, as set forth above, the automatic stay that DOJ seeks is not consistent with the law.

16

Finally, "with respect to the public interest, '[t]he alleged victims of Defendants' actions and the public at large have a strong interest in a speedy resolution of this civil action.'  This is especially true where, as here, a federal regulatory agency has been entrusted with protecting the public through enforcement actions."  *SEC v. Boucher*, No. 20-CV-1650-DMS-MSB, 2021 WL 321994, at *3 (S.D. Cal. Feb. 1, 2021) (citation omitted).  "'[A] policy of freely granting stays solely because a litigant is defending simultaneous multiple suits interferes' with judicial administration."  *Digital Equip. Corp.,* 142 F.R.D. at 14 (quoting *Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc*., 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980)).  DOJ ignores this public interest, and at the end of the day, offers no good reason to impede the progress of this action at this time.

## <u>CONCLUSION</u>

The Court should deny without prejudice the Government's Application to Intervene and For a Stay of Discovery, deferring any ruling until such time as actual discovery requests are made and the Court and parties can evaluate their impact, if any, on the pending Criminal Action.  And, in any event,  for the reasons set forth above, the Court should deny the Government's request for a blanket stay of discovery.

Dated: November 15, 2022

Respectfully submitted,

<u>s/ Lawrence S. Lustberg</u>
Lawrence S. Lustberg
Thomas R. Valen
Jeffrey L. Nagel
Paul A. Saso

GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
Llustberg@Gibbonslaw.com

17

3043341.3 111822-107624