

Lawrence S. Lustberg
Director

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731 Fax: 973-639-6285
llustberg@gibbonslaw.com

April 28, 2023

**VIA ECF**
The Honorable J. Paul Oetken, United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2101
New York, New York 10007

      Re:    *SEC v. Hwang, et al.* **No. 22 Civ. 3402 (JPO) (S.D.N.Y.)**

Dear Judge Oetken:

    As Your Honor is aware, this Firm represents defendant Sung Kook (Bill) Hwang in the above-referenced action. We write in advance of the oral argument on the motions to dismiss the amended complaint, scheduled for May 4, 2023, for two reasons. First, we wish to very briefly respond to the letter filed by Plaintiff Securities and Exchange Commission on March 24, 2023 (DE 99), which attaches an Order issued March 23, 2023 by the Honorable Alvin K. Hellerstein denying motions to dismiss the Indictment in the criminal proceeding parallel to this matter, *United States v. Hwang et al.*, No. 22-cr-240 (AKH). And second, we wish to bring to the Court's attention important information about a key case relied upon by the Plaintiff, which information came to our attention after the completion of briefing on the motions.

    *First*, in its March 24 letter, the SEC argues that Judge Hellerstein, in his Order rejected an argument made by Defendants in support of their motion to dismiss the SEC's amended complaint, specifically that a market manipulation claim cannot be stated by alleging legitimate trading activity, coupled solely with an intent to affect price. That description of what occurred in the criminal case mischaracterizes the proceedings in that matter. In fact, as Judge Hellerstein's Order makes clear, and the transcript of the oral argument on those motions (which we attach hereto as Tab A) confirms, his decision was unambiguously based upon his view that an indictment need only "(1) contain[] the elements of the offense charged and fairly inform[] [the defendants] of the charge against [them] which [they] must defend, and (2) enable[] the defendant[s] to plead an acquittal or conviction in bar of future prosecutions for the same offense." Order at 2 (quoting *United State v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021)). *See also* 3/21/23 Oral Argument Transcript at 28 ("But again, I think at this time on this record I cannot rule against the government in the sufficiency of the indictment."), 36 ("My ruling is that the indictment is legally sufficient at this point in time, although it raises numerous questions in my mind."), & 41 ("Any matter of controversy given the rules of pleading that exist in a criminal case, there's a danger you talked about. It sweeps in criminal conduct and permissible conduct. I can't cure that now.").[1] Of course, that standard is very different from not only the "plausibility" standard that applies here, under Federal Rule of Civil Procedure 12(b)(6), *see* Hwang's Memorandum of Law in Support of Motion to Dismiss ("Hwang Br.") at 7 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 644 (2007)) (DE 58), but also the heightened

---

[1] Judge Hellerstein rejected Mr. Hwang's argument that the standards applicable under Federal Rules of Criminal Procedure 7 and 12 allowed him to determine whether the indictment, even if all its facts were taken as true, failed to allege an offense within the meaning of the applicable statutes. *See* 3/21/23 Oral Argument Transcript at 23.

GIBBONS P.C.

Hon. J. Paul Oetken, U.S.D.J.
April 28, 2023
Page 2

pleading requirements that the SEC must satisfy under Rule 9(b), *see id.* at 11-14. That said, of course, we will be prepared to address this issue further at the oral argument, and of course, to discuss the standard governing the motion to dismiss the SEC's amended complaint in this action. But in fairness to the Court and the parties, we wanted to provide some notice as to our position on the matter in advance of the hearing.

Second, after we filed Mr. Hwang's reply brief, we discovered important information about a key case relied upon by the SEC. We apologize that we were not aware of the information in time to include it in our briefs, but because we may address it during the argument, and again, in fairness to the Court and counsel and in order to avoid any unfair surprise, we write to bring it the Court's attention in advance of the argument.

As the SEC's March 24th letter acknowledges, the question of whether or not alleging legitimate trading activity, coupled with the intent to affect price, is alone sufficient to state a claim for market manipulation under the federal securities laws – absent some additional deceptive conduct that creates a false market signal and artificial price – is a key legal issue presented in the pending motions to dismiss. The SEC contends that a claim for market manipulation can be stated by alleging only otherwise legitimate trading activities, such as end-of-day trading, "that are not inherently deceptive … so long as they are done with manipulative intent." Plaintiff's Opposition Brief, EFC No. 82, at 26. As support for that proposition, the SEC relies, in part, on *SEC v. Masri*, 523 F. Supp. 2d 361 (S.D.N.Y. 2007), a so-called "marking the close" case. *See* EFC No. 82 at 28 & 32 (citing *Masri*). Although the published history of *Masri* does not reveal it, our further review of the docket in that case is helpful to understanding the true significance of that case; indeed, if appears to demonstrate that the district court subsequently doubted, and apparently was prepared to openly reject, the view of the law for which the SEC cites it.

In *Masri*, Judge Holwell allowed the SEC's marking-the-close claims to proceed based upon allegations of only legitimate trading activity, including trading at the close, coupled with manipulative intent, even while noting that no Article III Court had endorsed the theory and recognizing that other courts within the district had dismissed such claims due to the failure to allege "any deceptive practice beyond mere sales." *See* 532 F. Supp. at 369 (citing, among other cases, *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC,* No. 02-CV-0767, 2003 U.S. Dist. LEXIS 11108, at *28 (S.D.N.Y. June 20, 2003) (Sand, J.)). However, shortly before *Masri* was decided, the Second Circuit affirmed the dismissal of a market manipulation claim based upon alleged high-volume short selling, holding that "something more" than the mere act of selling stock was needed to create price artificiality, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007); the *ATSI* decision was not cited in *Masri* and, as discussed below, had not been brought to Judge Holwell's attention before he rendered his decision. *ATSI* was then analyzed by Judge Sand in later decisions in the *Nanopierce* litigation, in which he re-affirmed the dismissal of manipulation claims based on massive short selling, and noted that "[m]ere sales do not inject false

GIBBONS P.C.

Hon. J. Paul Oetken, U.S.D.J.
April 28, 2023
Page 3

information into the market." *Nanopierce,* 2008 U.S. Dist. LEXIS 34560, at *6-7 (S.D.N.Y. Apr. 21, 2008).[2]

More than six months after Judge Holwell issued his opinion in *Masri*, counsel for the defendant submitted a letter advising the Court of the decision in *ATSI* and Judge Sand's subsequent *Nanopierce* rulings, and seeking permission to certify an interlocutory appeal of the *Masri* decision. *See* Tab B (*SEC v. Masri*, No. 4-cv-1584, ECF Docket Entry 62). The letter argued that, in light of *ATSI* and *Nanopierce*, Judge Holwell's decision allowing the SEC's claim to survive was erroneous. Although the letter was submitted long after the deadline to request certification for interlocutory appeal or to move for reconsideration, Judge Holwell endorsed it, ordering as follows: "Having reviewed counsel's submission, the Court grants defendant Masri leave to move for reconsideration." *See id.*

Following that extraordinary order, Masri's counsel filed a brief in support of his motion for reconsideration. *See* Tab C (*Masri* ECF Docket Entry 64). That brief directly raised the very question presented by the motions pending before this Court: whether otherwise legitimate open market transactions can be actionable when coupled only with allegations of "manipulative intent." *See*, *e.g*., *id.* at 11 ("The *ATSI* decision answered the question by clarifying that, in order to establish a market manipulation claim based on an open-market trade, it is necessary to demonstrate some deceptive or fraudulent behavior in addition to the transaction itself."). A week after receiving that brief, the SEC dismissed all of its claims against Masri with prejudice. *See* Tab D (*Masri* ECF Docket Entry 66). Press reports confirm that this dismissal was not part of a settlement. *See* Tab E (press release, found at www.securitiesdocket.com/2008/08/27/sec-voluntarily-dismisses-manipulation-claim-against-masri/). Because the SEC thus abandoned its case, Judge Holwell had no opportunity to revisit the *Masri* decision and no appeal was ever taken.[3]

---

[2] Although the SEC cites dictum from *ATSI*, the Second Circuit ruled that as a matter of law a market manipulation claim must allege conduct that disrupts "the natural interplay of supply and demand," gives "a false impression of how market participants value a security" and "sends a false pricing signal to the market." 493 F.3d at 100-01. Thus, the Second Circuit's holding in *ATSI* was that the allegations, which (just like the allegations in the amended complaint in this case) focused on both high-volume trading activity and precisely timed trades, were insufficient to state a claim for market manipulation under that governing standard. *Id. See also*, *e.g.*, *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) (holding that conduct that is not "inherently deceptive" cannot support a scheme liability securities fraud claim under Section 10(b) and Rule 10b-5).

[3] Even before Judge Holwell decided to revisit his opinion in *Masri*, he expressed concerns about the SEC's "intent alone" standard. Thus, for example, he ruled that before a court could impose liability under that standard the SEC would have to "prove that *but for* the manipulative intent, the defendant would not have conducted the transaction." 523 F. Supp. 2d at 372. He based this holding on *United States v. Mulheren*, 938 F.2d 364, 368 (2d Cir. 1991); because the Court in *Mulheren* expressed "misgivings" about the government's theory, it stood to reason that the Second Circuit would not permit liability when a trader's intent to alter the price was merely one purpose among several. 523 F. Supp. 2d at 373. Judge Holwell also noted that if a transaction would have been conducted for an investment purpose regardless of a parallel manipulative purpose, "it can no longer be said that it is 'artificially' affecting the price of the security or injecting information into the market, which is the principal concern about manipulative conduct." *Id.* Judge Holwell also expressed his own misgivings about "the inherent ambiguity in

GIBBONS P.C.

Hon. J. Paul Oetken, U.S.D.J.
April 28, 2023
Page 4

  Although the original *Masri* opinion has remained on the books, Mr. Hwang respectfully submits that the Court should consider *Masri* in light of these significant post-decision events. Specifically, this history, including Judge Holwell's decision to reconsider his opinion and the SEC's abandonment of its claims and unwillingness to defend its legal theory post-*ATSI*, all at least appear to support Mr. Hwang's position that market manipulation claims require some deceptive conduct, beyond permissible acts of trading, resulting in artificial prices.  Alleging lawful trading activity coupled only with an allegation of "manipulative intent," as the SEC did in *Masri* and seeks to do here, is, for the reasons that have been briefed and will be argued, insufficient as a matter of law.

  Thank you for Your Honor's kind consideration of this matter.

                Respectfully submitted,

                s/Lawrence S. Lustberg
                Lawrence S. Lustberg

cc:  All counsel of record (via ECF filing and email)

---

determining intent, the concerns about imposing liability for otherwise legal activity based solely on intent, and the potential for chilling such legal activity." *Id.*